# 07 CIV. 6410 (ECF)

*To be Argued by:*
**JOSEPH M. PASTORE III**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

**DUCKY INTERACTIVE, INC.,**

      **Debtor.**

— — — — — — — — — — — — — — — —

## BRIEF FOR APPELLANT

— — — — — — — — — — — — — — — —

**DREIER LLP**
Attorneys for Appellant
499 Park Ave.
New York, New York 10022

{00278318.DOC;}

## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, Joseph M. Pastore III, counsel for Appellant, Ducky Interactive, Inc. ("Ducky"), hereby certifies that Ducky has no parent corporation and that no publicly held corporation owns 10% or more of its stock.


Dated:  August 2, 2007
        New York, New York


Respectfully submitted,

DREIER LLP

By:     */s/ Steven E. Fox*
        Steven E. Fox (SF 5432)
        Anthony B. Stumbo (AS 9374)
        499 Park Avenue
        New York, New York 10022
        Tel. (212) 328-6100

        -and-

DREIER LLP
Joseph M. Pastore III  (JP 1717)
One Landmark Square
Stamford, Connecticut 06901
Tel. (203) 425-9500

Counsel for the Debtor and Scott B. Hockler

### TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. ii

Table of Authorities ..............................................................................iv

Jurisdiction ...........................................................................................1

Question Presented .................................................................................1

Preliminary Statement .............................................................................2

Standard of Review .................................................................................4

Argument ..............................................................................................5

    I.   THE BANKRUPTCY COURT SHOULD NOT HAVE EXERCISED ITS
        FORMIDABLE CONTEMPT POWER IN THIS CASE .........................5

        A. Mr. Hockler Was Diligent in his Attempts to Comply with the
           Spirit and Intent of the Bankruptcy Court's Directives................ 5

        B. Saylavee Did Not Show by Clear and Convincing Evidence that
           Mr. Hockler Failed to Materially Comply with the Court's Order ...7

    II.  SAYLAVEE'S UNCLEAN HANDS SHOULD HAVE PREVENTED
        IT FROM INVOKING THE COURT'S EQUITY POWER ...................7

        A. Over the Past Several Years, Through Six Separate Litigations,
           Including the Claims Before the Bankruptcy Court, Mr. Lichtman
           and/or Saylavee Have Improperly Used Courts to Fulfill a Personal
           Vendetta and the Instant Sanctions Were Only Sought to Continue
           This Vendetta.......... ...................................................8

        B. The Bankruptcy Court Awarded Sanctions Despite Numerous
           Misrepresentations Made to the Court....................................10

    III.  THE SANCTIONS AWARDED ARE UNREASONABLE ..................12

    IV.  CONCLUSION ..............................................................15

## TABLE OF AUTHORITIES

Cases

1.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995) ...13

2.  California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609 (1885) ............5

3.  City of New York v. Local 28, Sheet Metal Workers' Int'l Ass 'n
    170 F.3d 279, 283 (2d Cir. 1999) .......................................................5

4.  Devils Films, Inc. v. Nectar Video
    2000 WL 1201383 (S.D.N.Y. Aug. 23, 2000) ...................................................7

5.  In re Chateaugay Corp., 920 F.2d 183 (2d Cir. 1990)……......................7

6.  In re Grand Jury Proceedings Empanelled May 1988
    894 F.2d 881 (7th Cir. 1989) (Posner, J.) ................................................7

7.  In re Sphinx, Ltd.
    No. 06-11760, 2007 WL 1965597, at *6 (S.D.N.Y. July 5, 2007) .................4

8.  King v. Allied Vision Ltd., 65 F.3d 1051 (2d Cir. 1995) ........................5, 7

9.  United States v. Local 1804-1, Int'l Longshoremen's Ass 'n, AFL-CIO, et al.
    44 F.3d 1091, 1095-96 (2d Cir. 1995) ...................................................5

Federal Laws, Rules and Regulations

1.  28 U.S.C. § 158 ...........................................................................1

2.  Bankruptcy Rule 2004 ............................................................... 2, 6

3.  Bankruptcy Rule 7037 ................................................................. 12

4.  Bankruptcy Rule 8002(a) ...............................................................1

5.  Bankruptcy Rule 8005 ...................................................................1

6.  Bankruptcy Rule 8013 ...................................................................4

7.  Bankruptcy Rule 9016 ...................................................................1

8.  Fed. R. Civ. P. Rule 37 ............................................................... 12

9.  Fed. R. Civ. P. Rule 45(e) ............................................................ 1

## JURISDICTION

This is an appeal from a final Order imposing sanctions on Scott B. Hockler ("Mr. Hockler"), in his capacity as the court-designated "representative" of Ducky Interactive, Inc. ("Ducky"), solely in connection with a certain Bankruptcy Rule 2004 examination conducted by Saylavee, LLC ("Saylavee"), entered on June 1, 2007 in the United States Bankruptcy Court for the Southern District of New York. The District Court for the Southern District of New York has jurisdiction over this appeal pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8005. This Court is the District Court for the judicial district in which the Bankruptcy Judge who entered the Order (Hon. Adlai S. Hardin, Jr., *U.S.B.J.*) is sitting. This appeal is timely under Bankruptcy Rule 8002(a) in that the Notice of Appeal was filed on June 11, 2007, within 10 days of the date of entry of the Order.

## QUESTION PRESENTED

1.     Whether the Bankruptcy Court erred in granting Saylavee's Motion for (a) Order of Contempt Pursuant to Rule 9016 Fed. R. Bankr. P. and Rule 45(e) F. R. Civ. P. and (b) Imposition of Sanctions, to the extent that: (i) sanctions in the amount of Eighteen Thousand and 00/100 Dollars ($18,000.00) ("Sanctions") were imposed upon Mr. Hockler; (ii) Mr. Hockler was directed to make payment of the amount of the Sanctions to Saylavee, LLC within 10 days upon receipt of notice of entry of the Order; and (iii) upon failure of Mr. Hockler to make payment pursuant to the terms and provisions of the Order, and without further notice, judgment shall be entered in favor of Saylavee and against Mr. Hockler in an amount to be determined by the Court.

## PRELIMINARY STATEMENT

Mr. Hockler, in his capacity as the court-designated "representative" of Ducky, the Debtor, solely in connection with a certain Bankruptcy Rule 2004 examination conducted by Saylavee, hereby appeals the Order imposing on him $18,000 in Sanctions, entered on June 1, 2007 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") by the Honorable Judge Adlai S. Hardin, Jr. (the "June 1 Order").[1] See Designation of the Record, Docket # ("Docket #") 90.

At Saylavee's request, the Bankruptcy Court held Mr. Hockler in contempt based on his purported failure to produce copies of checks and bank statements requested in a subpoena served on Mr. Hockler as ordered by the Court. Saylavee sought these sanctions despite the fact that the majority of the documents requested by Saylavee were in the possession of Ducky's court-appointed Trustee, Jeffrey Sapir, ("Trustee Sapir") since the commencement of the bankruptcy proceedings entitled *In re: Ducky Interactive, LLC*, Case No. 05-23457 (the "Bankruptcy Proceedings").

On April 17, 2006, Saylavee served on Mr. Hockler a Subpoena for a Rule 2004 examination (the "Rule 2004 Subpoena"). After reviewing the documents requested in the Rule 2004 Subpoena, Mr. Hockler determined that the large majority of these documents had previously been produced through prior counsel to Trustee Sapir. Despite this, Mr. Hockler exerted good faith efforts to reproduce these documents, plus additional documents, in May of 2006, at his own expense. Mr. Hockler also informed Saylavee that the majority of documents requested were already in the possession of Trustee Sapir. On August 22, 2006, Saylavee filed its Motion (a) to Compel production of Documents

---

[1] On June 11, 2007, Mr. Hockler filed a motion in the Bankruptcy Court seeking a stay of the June 1 Order pending the outcome of the Appeal. The Bankruptcy Court denied this motion.

and (b) for Order of Contempt ("Motion for Contempt") for Mr. Hockler's failure to comply with the Rule 2004 Subpoena. See Docket #30.

At a hearing on the Motion for Contempt held before the Bankruptcy Court on September 28, 2006, (the "September 28 Hearing") Judge Hardin ordered that Mr. Hockler produce *all* bank statements related to Ducky, despite counsel's assertions that Trustee Sapir had previously received information and passwords essential to retrieving these documents, and despite that the majority of these documents had already been produced. One week later, on October 4, 2006, Mr. Hockler filed a declaration with the Court detailing steps initiated by him in response to the Bankruptcy Court's directive ("October 4 Declaration"). See October 4 Declaration (excluding exhibits) attached as Exhibit A. On October 20, 2006, Mr. Hockler filed a supplemental declaration with the Court detailing additional steps undertaken to retrieve requested documents. See Supplemental Declaration, attached as Exhibit B. Ultimately, Mr. Hockler produced copies of all bank statements and checks from both Citibank and Bank of America for the Ducky accounts referenced in the Court's directives.

Mr. Hockler's diligent efforts to timely produce documents were well documented. Despite Mr. Hockler's good faith efforts and the fact that the Trustee had the documents in question, Saylavee and its principal, Steven Lichtman, ("Mr. Lichtman") pressed for sanctions, clearly in an effort to continue their efforts to harass Mr. Hockler - an effort that began six litigations and two years earlier.

On June 1, 2007, the Bankruptcy Court awarded Saylavee a disproportionate $18,000 in Sanctions. On June 11, 2007, Mr. Hockler timely filed his Notice of Appeal. See Docket #95. Despite this Notice of Appeal, at Saylavee's request, on June 22, 2007,

the Court entered an additional Order authorizing Saylavee to undertake enforcement of the June 1 Order (the "June 22 Order"). See June 22 Order, attached as Exhibit C. On June 26, 2007, counsel for Mr. Hockler sent a letter to Judge Hardin requesting that he immediately vacate the June 22 Order and grant Mr. Hockler's a stay pending appeal. The Judge denied these two requests via Order, dated June 27, 2007. See June 27 Order, attached as Exhibit D.

Contempt must be shown by clear and convincing evidence, and contempt does not lie where a party has acted with reasonable diligence to conform his actions to a Court Order. Even if there were grounds for contempt - which there were not - the Bankruptcy Court should still have considered Mr. Lichtman's and/or Saylavee's unclean hands in these and related matters, which represented reason to deny it relief in the form of Sanctions. As set forth more fully below, the Motion for Contempt merely furthered Mr. Lichtman's and/or Saylavee's personal vendetta against Mr. Hockler, and yet the Bankruptcy Court awarded them highly unreasonable sanctions. Accordingly, the June 1 Order imposing Sanctions on Mr. Hockler should be reversed.

## STANDARD OF REVIEW

In reviewing Bankruptcy Court decision, District Courts may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Conclusions of law are reviewed *de novo*, while "[f]indings of fact...shall not be set aside unless clearly erroneous..." *In re Sphinx, Ltd.*, No. 06-11760, 2007 WL 1965597, at *6 (S.D.N.Y. July 5, 2007) (citing Fed. R. Bankr. P. 8013)).

## ARGUMENT

### I.    THE BANKRUPTCY COURT SHOULD NOT HAVE EXERCISED ITS FORMIDABLE CONTEMPT POWER IN THIS CASE

The contempt power is "among the most formidable weapons in the court's arsenal, and one with significant potential for harm if it is wielded imprudently." *United States v. Local 1804-1, Int'l Longshoremen's Ass 'n, AFL-CIO, et al.,* 44 F.3d 1091, 1095 96 (2d Cir. 1995); *City of New York v. Local 28, Sheet Metal Workers' Int'l Ass 'n,* 170 F.3d 279, 283 (2d Cir. 1999) (referring to the "formidable and potentially harmful nature of the contempt power").

The Second Circuit cautioned courts not to resort to the "potent weapon" of contempt "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *King v. Allied Vision Ltd.,* 65 F.3d 1051 (2d Cir. 1995) (citing *California Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609 (1885)). As set forth below, in light of Mr. Hockler's diligent efforts to comply with the Rule 2004 Subpoena and the Bankruptcy Court's directives in the Bankruptcy Proceedings, the June 1 Order imposing Sanctions on Mr. Hockler should be reversed.

#### A.  Mr. Hockler Was Diligent in his Attempts to Comply with the Spirit and Intent of the Court's Directives

Mr. Hockler at all times attempted to comply with the letter and spirit of all Bankruptcy Court directives. As set forth in Mr. Hockler's October 4 Declaration, on September 28, 2006, the same day the Court directed him to retrieve certain checks, he personally went to Citibank and Bank of America, the only two banks at which Ducky maintained accounts and/or records of statements and checks, to retrieve the items requested. Bank of America informed Mr. Hockler that retrieval of records would take

one week (See Bank of America Letter, attached as Exhibit E), and Citibank informed him that processing his request would take up to 10 days (See Citibank Letter, attached as Exhibit F). Mr. Hockler should not be held responsible for Citibank or Bank of America's additional delays in producing the checks thereafter.

Moreover, as maintained by Mr. Hockler before the Bankruptcy Court, many, if not all items requested by Saylavee in its Rule 2004 Subpoena were in the possession of Trustee Sapir since the outset of the Bankruptcy Proceedings. In fact, following a hearing held before the Bankruptcy Court on November 7, 2006, (the "November 7 Hearing") and notwithstanding numerous prior statements by Trustee Sapir and Mr. Lichtman's and/or Saylavee's counsel to the contrary, Trustee Sapir admitted to being in possession of 191 Ducky checks. These checks comprised the main thrust of Saylavee's document requests and the main topic of discussion at the September 28 Hearing. (See Trustee Sapir's letter dated November 22, 2006, bates number SH 2639, attached as Exhibit G).

In numerous letters, pleadings, and other communications with Saylavee's counsel in this case, Mr. Hockler contended that since Trustee Sapir was in possession of the documents, checks, statements and other information requested by Saylavee, he should be contacted directly for their immediate examination. If Saylavee and/or Mr. Lichtman were truly interested only in the documents, they would have procured them from the best available source -- Trustee Sapir.

Following the November 7 Hearing, Mr. Hockler produced in excess of 1,000 documents in connection with the Rule 2004 Subpoena and the Court's September 28 directives. In total, Mr. Hockler produced over 8,000 documents to Mr. Lichtman and/or

Saylavee in connection with the Bankruptcy Proceedings. Any delay that may have been caused in the production of a small percentage of certain documents is not from lack of effort on the part of Mr. Hockler. These delays were caused by third parties and were not reflective of Mr. Hockler's efforts to frustrate discovery or of his disregard of the Subpoena and the Bankruptcy Court's directives, both of which Mr. Hockler takes very seriously.

### B. Saylavee Did Not Show by Clear and Convincing Evidence that Mr. Hockler Failed to Materially Comply with the Court's Order

In a civil contempt proceeding, a contempt holding must fail unless the proof of non-compliance of a court order is "clear and convincing," and the contemnor has been careless in attempting to comply. *King,* 65 F.3d at 1058. The alleged contemnor's subjective intent is also relevant and should be taken into account. *See In re Chateaugay Corp.,* 920 F.2d 183 (2d Cir. 1990) (contempt involves maliciousness or lack of a good faith argument and belief that the party's actions were not in violation of order).

Mr. Hockler and counsel made diligent efforts to comply with the April 17 Subpoena and the Court's subsequent directives in the Bankruptcy Proceedings. At no time was Mr. Hockler careless, malicious, or acting with a lack of good faith. As no clear and convincing evidence was set forth asserting that Mr. Hockler acted to the contrary, the June 1 Order imposing Sanctions for Mr. Hockler's alleged contempt must be reversed.

## II.   SAYLAVEE'S UNCLEAN HANDS SHOULD HAVE PREVENTED IT FROM INVOKING THE COURT'S EQUITY POWER

Civil contempt, an equity procedure, is subject to equitable defenses. *In re Grand Jury Proceedings Empanelled May 1988,* 894 F.2d 881 (7th Cir. 1989) (Posner, J.). In particular, the unclean hands of the party moving for contempt is relevant to whether that movant is entitled to relief. *Devils Films, Inc. v. Nectar Video,* 2000 WL 1201383

(S.D.N.Y. Aug. 23, 2000) (denying injunctive relief to plaintiff because court did not want plaintiff, with unclean hands, to be able to invoke the court's contempt powers). Saylavee comes to this Court with unclean hands, and for this reason, the June 1 Order imposing Sanctions on Mr. Hockler should be reversed.

> **A.    Over the Past Several Years, Through Six Separate Litigations, Including Claims Before the Bankruptcy Court, Mr. Lichtman and/or Saylavee Have Improperly Used Courts to Fulfill a Personal Vendetta, and the Instant Sanctions Were Only Sought to Continue to harass Mr. Hockler**

To date, Mr. Lichtman and/or Saylavee, have brought <u>six</u> separate litigations and/or claims, each relating to Mr. Lichtman's and Mr. Hockler's three month business venture involving exercise studios now at issue in Bankruptcy Proceedings. On or about August 12, 2004, Mr. Lichtman and/or Saylavee initiated a Connecticut Federal Court action by filing a brash and ludicrous complaint, which the Court ultimately labeled as "tabloid journalism." Nearly a year later, in that same action, Mr. Lichtman and/or Saylavee were forced to withdraw a frivolous prejudgment remedy application without a defense. While that case has currently been stayed, Mr. Hockler's Rule 11 Motion for Sanctions and Motion for Attorneys Fees are still outstanding. Failing immediate success in the District Court, in 2005, Mr. Lichtman and/or Saylavee brought additional claims against Mr. Hockler in State Court in Connecticut (the "Connecticut State Action"), which were ultimately rejected by Judge Adams, and the case was dismissed by agreement. See Withdrawal, attached as Exhibit H.

Mr. Lichtman and/or Saylavee, on several occasions, also attacked Mr. Hockler on a personal level. For instance, in the Connecticut State Action, Mr. Lichtman unsuccessfully sued an exercise teacher who worked at Mr. Hockler's exercise studios on

two separate occasions, the second of which occurred after a final release was entered. See Transcript of the PJR Hearing, held before Judge Thomas P. Smith on October 5, 2005, p. 80, attached as Exhibit I.   Mr. Lichtman then sought discovery from Mr. Hockler's personal friend, who had never even visited the exercise studios and had no involvement with the business at issue in the action. See Transcript of the Deposition of Ms. Holly Weissman, dated February 15, 2005, p. 138, attached as Exhibit J.  Even more troubling, Mr. Lichtman threatened to sue Mr. Hockler's wife, Pamela Stone, regarding issues that had been previously resolved nearly a year earlier. See Exhibit I, p. 177.

Even more telling, in total, Mr. Lichtman and/or Saylavee utilized the resources of three separate law firms and spent in excess of $1,000,000 pursuing claims which never totaled more than $50,000.   In fact, Mr. Lichtman and/or Saylavee are now engaged in arbitration with their former law firm, Pullman & Comley, because they failed to pay the legal fees associated with these matters. See Complaint, attached as Exhibit K. Again, what is particularly egregious and outrageous is that Mr. Lichtman and/or Saylavee were only involved in the small business at the center of these various judicial proceedings for only three months.

Despite Mr. Lichtman's and/or Saylavee's concerted efforts to utilize the judicial system to further Mr. Lichtman's personal vendetta against Mr. Hockler, evidently developed in the course of their short business relationship, all of these actions have been rejected, stayed, released or dismissed.  Judge Hardin, throughout the course of all these claims, is the only judge who failed to recognize that Mr. Lichtman utilizes the judicial system, at any cost, merely to harass Mr. Hockler.  It was only until recently, after awarding the Sanctions to Saylavee, did he dismiss Saylavee's most recent attempts to

initiate an adversary proceeding against Mr. Hockler and Trustee Sapir, and also appear

to be interested in the Bankruptcy Proceedings reaching a Settlement.

**B.    The Bankruptcy Court Awarded Sanctions Despite Numerous Misrepresentations Made to the Court**

Mr. Lichtman's and/or Saylavee's compulsive desire to prevail against Mr.

Hockler apparently overwhelmed its Counsel's obligation to be truthful with the

Bankruptcy Court. In their haste to seek Sanctions, Counsel made several outright

misrepresentations to the Bankruptcy Court. In the Supplemental Affidavit of Louis J.

Testa, current counsel to Saylavee, which was sworn to and notarized by Attorney Testa

on February 12, 2007 and filed in Support of Saylavee's Motion for Contempt (See

Docket #72), he made several statements that are completely untrue. This is particularly

troubling in light of the fact that these sworn statements were submitted by Attorney

Testa to the Court in support of the Sanctions requested and subsequently awarded.

In Attorney Testa's Affidavit, he cites to a January 15, 2007 e-mail sent to Mr.

Hockler's counsel requesting the answers to three questions related to the production of

Citibank checks. Attorney Testa swears in his Affidavit that "your deponent has not

received a response to the January 15 Inquiry." See Docket #72, ¶¶ 10, 11. A copy of

Attorney Testa's e-mail was then attached to the Affidavit as an Exhibit in support of this

representation to the Court.

This is clear misrepresentation of fact made by Attorney Testa, sworn to and

submitted by him to this Court. A response to Attorney Testa's January 15, 2007 e-mail

was in fact sent by counsel to Mr. Hockler to Attorney Testa. The response, which fully

answered all questioned posed in Attorney Testa's e-mail was sent *the next day* -- on

January 16, 2007. See Letter attached hereto as Exhibit L. This letter, which included

bates labeled documents, was sent via federal express (with confirmed delivery receipt). This misrepresentation made by Attorney Testa to the Court was clearly an improper attempt to portray Mr. Hockler as recalcitrant, in an effort to inflame the Court.

Attorney Testa's Affidavit also contains another important misstatement of fact and clear misrepresentation to the Court. In paragraph 21, he states that "the Certificate of Amendment reflects a change in the company name of Ducky Interactive, LLC, itself a chapter 7 Debtor in this Court (Case No. 05-23458) to 'Ducky Interactive of New York, LLC. Upon information and belief such name change was ***not*** authorized by Jeffrey Sapir, Chapter 7 Trustee . . ."

This again clearly contradicts the facts. On September 20, 2005, counsel for Mr. Hockler sent a letter to Trustee Sapir requesting his consent to change the name of Ducky Interactive, LLC to Ducky Interactive of New York, LLC. See Letter, attached as Exhibit M. On September 27, 2005, counsel for Mr. Hockler requested via e-mail confirmation by Trustee Sapir that the name change described above was in fact approved. On September 27, 2005 Trustee Sapir granted confirmed his approval via e-mail. See Email, attached as Exhibit N. Mr. Testa evidently did not bother to review the file before making this sworn statement to the Court. Counsel's misstatements in support of the Motion for Contempt demonstrate Mr. Lichtman's and/or Saylavee's desire to inflame this Court at all costs. For what reason? This was never about discovery. This was always about the Sanctions, and it was about beating Mr. Hockler.

Mr. Lichtman's strategy since the inception of the disputes between these two parties has always been one of ongoing harassment. The misrepresentations made to the Bankruptcy Court by Mr. Lichtman's counsel indicate a similar pattern. In Mr.

{00276529.DOC;2}

Lichtman's case, the motive is clear -- ***win at all costs***.  While counsel to Mr. Hockler

hoped that this same attitude was never adopted by opposing counsel, the sworn Affidavit

of Attorney Testa seem indicated a clear disregard for the truth, or, at the minimum, its

relegation to backseat status in order to obtain some pound of flesh for the $1,000,000.00

spent on these matters.

Judge Hardin stood for this behavior, but the District Court has an opportunity to

correct this injustice.  In light of Mr. Lichtman's and/or Sayalvee's unclean hands in

these matters, as well as the unclean hands of their counsel, the District Court should

reverse the June 1 Sanctions Order against Mr. Hockler and in favor of these the ongoing

plight to harass Mr. Hockler at any cost.

## III.    THE SANCTIONS AWARDED ARE UNREASONABLE

Bankruptcy Rule 7037 incorporates Rule 37 of the Federal Rules of Civil

Procedure.  Rule 37(b)(2)(E) permits the Court to "require the party failing to obey [an]

order to pay the reasonable expenses, including attorney's fees, caused by the failure,

either in lieu of or in addition to that relief."  The provision provides an exception,

however, where the court finds that "other circumstances make an award of expenses

unjust." *Id.*

Mr. Lichtman made no effort to mitigate sanctions and/or related attorneys fees

by obtaining subpoenaed documents from an alternate source.  The primary source,

Trustee Sapir, was both known and available from the outset.  This is a clear example of

the "other circumstances" contained in Rule 37(b)(2)(E) that would make the imposition

of Sanctions on Mr. Hockler unjust.

As maintained by Mr. Hockler throughout this litigation, the majority of the documents which form the basis for the Motion for Contempt were in the possession of Trustee Sapir since the filing of the Bankruptcy Proceedings almost two years ago. The lack of diligent efforts to obtain the requested documents from Trustee Sapir, after Mr. Hockler informed Counsel for Saylavee that banks would take time to retrieve the documents, confirms that Mr. Lichtman and/or Saylavee were never interested in getting the documents.

The Bankruptcy Court should have considered numerous factors which are relevant to the exercise of its discretion in this area. Factors generally considered include (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance. *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-54 (2d Cir. 1995).

Mr. Hockler made numerous attempts to retrieve the checks in question, and his minimal non-compliance was not intentional. In fact, in May of 2006, Mr. Hockler, after having previously turned everything over to Trustee Sapir, actively worked to recreate the corporate records maintained at the studios in an effort to comply with the original April 17 Subpoena. It is undisputed that Mr. Hockler did not willfully attempt to avert the Subpoena.

What is more troubling is that the $18,000 in Sanctions awarded to Saylavee in the Bankruptcy Proceedings are far disproportional to the total amounts in dispute. On June 12, 2007, Trustee Sapir signed a Settlement Agreement in principal requiring Mr.

Hockler to pay just over $20,000 to the Ducky estate in order to bring the Bankruptcy Proceedings to a close. See Settlement Agreement, attached as Exhibit O.[2] Moreover, the proofs of claims submitted by all third-party vendors and customers, save Saylavee, do not even total $18,000.

Saylavee's Proof of Claim contained a claim for $116,000 in legal fees which have neither been sought by Saylavee nor awarded to it by a Court, representing nearly 50% of its claim. It also seeks "reimbursement" for the voluntary purchase of an exercise studio in New Canaan, Connecticut, purchased from the Ducky bankruptcy estate and approved by this Court. See Saylavee Proof of Claim, attached as Exhibit P. Not only is the idea of claiming a reimbursement for a voluntary purchase outrageous, but the New Canaan Studio was sold to a third party, not Mr. Lichtman or Saylavee, who filed the Proof of Claim. See Notice of Intended Sale and Order Approving Sale, attached as Exhibits Q and R, respectively. Trustee Sapir believes this proof of claim to be fraudulent in both these respects, and therefore did not consider it in evaluating the legitimate claims which are to be paid out of any settlement money. See Motion to Approve Compromise, attached as Exhibit S.

Moreover, Saylavee was never prejudiced by the delay of production leading to the imposition of Sanctions. It received virtually every document and check requested in the few months following the September 28 Hearing, and the Bankruptcy Proceedings are now continuing onward towards Settlement. Saylavee and/or Mr. Lichtman will be unable to utilize the documents requested in support of their potentially fraudulent proof

---

[2] At a Hearing before the Bankruptcy Court on July 24, 2007, Judge Hardin delayed approving the Settlement Agreement, pending the parties addressing a fraudulent Proof of Claim filed by Saylavee.

of claim, and the Settlement Agreement will likely be approved after the fraud is addressed.

Mr. Lichtman and Saylavee believe they can simply throw mud at the face of the Bankruptcy Court with impunity. While the Bankruptcy Court was unable to see through this pattern of harassment resulting in an unreasonably high award for Sanctions, the District Court should not allow its good offices and courtrooms to be used as a foil for a personal grudge.

## CONCLUSION

For the foregoing reasons, the Court should immediately vacate the June 1 Order.

Dated:  August 2, 2007
        New York, New York

                            Respectfully submitted,

                            DREIER LLP

                            By:    /s/ Steven E. Fox
                                   Steven E. Fox (SF 5432)
                                   Anthony B. Stumbo (AS 9374)
                                   499 Park Avenue
                                   New York, New York 10022
                                   Tel. (212) 328-6100

                                   -and-

                            DREIER LLP
                            Joseph M. Pastore III  (JP 1717)
                            One Landmark Square
                            Stamford, Connecticut 06901
                            Tel. (203) 425-9500

                            Counsel for the Debtor and Scott B. Hockler

{00276529.DOC;2}                                                    15