# EXHIBIT A

DREIER LLP
499 Park Avenue
New York, New York 10022
Steven E. Fox (SF 5432)
Anthony B. Stumbo (AS 9374)
Tel. (212) 328-6100

DREIER LLP
One Landmark Square
Stamford, Connecticut 06901
Joseph M. Pastore III
Earl T. Ormond
Tel. (203) 425-9500

Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:

DUCKY INTERACTIVE, INC.,                                    Chapter 7
                                                            Case No. 05-23457 (ASH)
                    Debtor

-----------------------------------------------------x

## DECLARATION OF SCOTT B. HOCKLER

I, Scott B. Hockler, declare under the penalty of perjury:

1.    I reside at 12 Penwood Road, Mount Kisco, New York. Unless otherwise stated in this declaration, I have personal knowledge of the facts hereinafter set forth. I state that I have now ordered the bank accounts at issue in this matter for the third time. I provide the details below.

2.    On or around April 17, 2006 I was served with a Subpoena for Rule 2004 Examination ("the Subpoena") by the law firm of Neubert, Pepe & Monteith, PC, on behalf of Saylavee, LLC ("Saylavee"), requesting that I produce documents in the above captioned action. Pursuant to that certain "Substitute Order Authorizing Examination of

{00194892.DOC;}

Ducky Interactive, Inc. Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure", dated November 8, 2005 ("2004 Exam Order"), the Court designated me, Scott B. Hockler ("Hockler") as the "representative" of Ducky Interactive, Inc. ("Ducky") for purposes of appearing at the subject examination. This Declaration is therefore submitted on behalf of myself as well as in my capacity as Court-designated "representative" of the Ducky solely for these limited purposes.

3.    I and/or Ducky have been in several exhaustive and abusive litigations with Saylavee and its principal Steven Lichtman ("Lichtman"). *See* Saylavee, LLC and Steven Lichtman v. Scott B. Hockler, D/B/A Ducky Interactive, Inc. and Ducky Interactive, LLC, 3:04-CV-1344 (the "1344 action"), Ducky Interactive, Inc. and Scott B. Hockler v. Saylavee, LLC and Steven Lichtman, 3:04-CV-1500 (the "1500 action"), and Hockler v. Lichtman, FST-CV-05-40002987 (the "State Court Action").

4.    After reviewing the documents requests in this Subpoena, I realized that I had previously provided these documents to the law firm of Pullman & Comley last year when that firm represented Saylavee.

5.    Despite the additional copying and shipping expenses, and prior production to Pullman & Comley, I again agreed to produce another entire set of additional documents for Saylavee's new counsel, Nuebert, Pepe and Monteith. These were given to opposing counsel in May of 2006.

6.    During my search in May of 2006, I discovered some additional documents that I had not previously produced and immediately notified my attorney to produce these to opposing counsel. These were turned over in May of 2006.

7.    At a hearing held on September 28, 2006, Judge Hardin ordered all bank statements related to Ducky to be produced. My counsel tried to explain that these statements have been previously produced on several occasions and/or the passwords disclosed to the Trustee.

8.    More specifically, I previously produced for Trustee Sapir bank statements from Citibank on October 7, 2005. Attached hereto as Exhibit "A" is the October 7, 2005 fax cover sheet to Trustee Sapir, along with Citibank statements. On October 3, 2005 I also provided Trustee Sapir with passwords and other information needed to access the account information for Fleet/Bank of America account for Ducky Interactive, Inc. online. I then again provided the passwords and other information needed to access these accounts on September 12, 2006. Attached as Exhibit "B" are my counsel's letters enclosing on two separate occasions the passwords needed to access the account. Thus, I provided all the information that the Trustee needs over a year ago.

9.    Citibank and Fleet/Bank of America are the only banks I am aware of that have bank statements related to Ducky and/or the exercise studios. Upon information and belief, during his pre-bankruptcy association with the exercise studios in question, Lichtman opened bank accounts for the exercise studios. I am unaware as to the identity or location of the accounts or institutions where the subject accounts were maintained, and I have no access or control over those accounts.

10.    Nevertheless, as a result of Judge Hardin's ruling, I again went to Citibank and Bank of America to request bank statements related to Ducky Interactive Inc.

{00194892.DOC;}

11.    On September 28, 2006 I was told by Bank of America that these bank statements will be available early next week. I have attached a copy of this letter to this declaration. (Attached as Exhibit "C").

12.    On September 28, 2006 I was told by Citibank that this request will take up to 10 business days to process. I have attached a copy of this letter to this declaration. (Attached as Exhibit "D").

13.    Subsequent to the commencement of this Chapter 7 case, I handed the keys to the exercise studios to Trustee Sapir in 2005, per his express instructions. Many of the business records of the studios were at the studio at this time.

14.    Lichtman and/or Saylavee or their affiliates purchased the assets of two of the three exercise studios. It is my understanding that the records remained at the premises at the time of said sale, and therefore were available to Lichtman and/or Saylavee. To the extent these records were left at the premises, they are not available to me and I am unable to make any production thereof. All responsive documents that were available to me or my counsel have otherwise been produced, as noted above.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 4, 2006.

Scott B. Hockler

{00194892.DOC;}

4

# EXHIBIT B

DREIER LLP
499 Park Avenue
New York, New York 10022
Steven E. Fox (SF 5432)
Anthony B. Stumbo (AS 9374)
Tel. (212) 328-6100

DREIER LLP
One Landmark Square
Stamford, Connecticut 06901
Joseph M. Pastore III
Earl T. Ormond
Tel. (203) 425-9500

Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

DUCKY INTERACTIVE, INC.,                    Chapter 7
                                            Case No. 05-23457 (ASH)
                    Debtor


-----------------------------------------------------------x


## SUPPLEMENTAL DECLARATION OF SCOTT B. HOCKLER

I, Scott B. Hockler, declare under the penalty of perjury:

1.       I reside at 12 Penwood Road, Mount Kisco, New York. Unless otherwise

stated in this declaration, I have personal knowledge of the facts hereinafter set forth. I

make this Supplemental Affidavit in a continuing effort to provide complete and full

compliance with any and all obligations under the Subpoena for Rule 2004 Examination

("the Subpoena") by the law firm of Neubert, Pepe & Monteith, PC, on behalf of

Saylavee, LLC ("Saylavee") dated April 17, 2006, as that compliance has been defined

by counsel to Saylavee.

{00200701.DOC;}

2.    I state that I have now ordered all the bank account statements that I am aware of at issue in this matter. I provide the details below.

3.    On or around April 17, 2006, I was served with the Subpoena requesting that I produce documents in the above captioned action. Pursuant to that certain "Substitute Order Authorizing Examination of Ducky Interactive, Inc. Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure", dated November 8, 2005 ("2004 Exam Order"), the Court designated me, Scott B. Hockler ("Hockler") as the "representative" of Ducky Interactive, Inc. ("Ducky") for purposes of appearing at the subject examination. This Declaration is therefore submitted on behalf of myself, as well as in my capacity as Court-designated "representative" of Ducky solely for these limited purposes.

4.    On October 4, 2006 I submitted a declaration to the Court regarding production of bank statements requested by Saylavee in this case. At this time I also have additional information that I would like to submit to the Court.

5.    The only bank accounts that I am aware of, maintained by Ducky for the five years prior to commencement of the bankruptcy are Citibank account number 95322108 and Fleet/Bank of America account number 0095 0107 5861.

6.    As ordered by the Court, I have asked the Bank of America to provide statements for account number 0095 0107 5861 for three (3) years prior to the commencement of bankruptcy. In addition I have also asked Bank of America to produce copies of canceled checks, check registers, and signature cards requested by Saylavee. The Bank of America Account did not go back three (3) years because it did not exist for three (3) years.

{00200701.DOC;}                              2

7.      As ordered by the Court I have asked Citibank to provide all statements from Citibank account number 95322108 for three (3) years prior to the commencement of the bankruptcy. In addition, I have also asked Citibank to produce copies of canceled checks, check registers, and signature cards requested by Saylavee. I am told that these items will cost $5.00 per item. I have been told by Citibank that the estimated costs of obtaining copies of these items may be in excess of $8,000. Citibank requires that these fees be paid in advance prior to their search for any items. My attorneys have requested that Saylavee and/or Lichtman advance these costs. I understand that Saylavee's counsel has refused.

8.      Steven Lichtman ("Lichtman") and/or Saylavee or their affiliates purchased the assets of two of the three exercise studios. It is my understanding that the records remained at the premises at the time of said sale, and therefore were available to Lichtman and/or Saylavee. To the extent these records were left at the premises, they are not available to me and I am unable to make any production thereof. All responsive documents that were available to me or my counsel have otherwise been produced, as noted above.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 20, 2006.

Scott B. Hockler

# EXHIBIT C

Louis J. Testa (LT2213)
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut  06510
Tel. 203.821.2000 / Fax 203.821.2008
Counsel to Saylavee, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
In re:                                          :
                                                :        CHAPTER 7
DUCKY INTERACTIVE, INC.,                         :
                                                :        CASE NO. 05-23457 (ASH)
                            Debtor               :
---------------------------------------------------x

## ORDER GRANTING JUDGMENT

Saylavee, LLC ("Saylavee") having moved for (a) an Order of Contempt Pursuant to

Rule 9016 Fed. R. Bankr. P. and Rule 45(e) F. R. Civ. P. and (b) Imposition of Sanctions in this

case,

Upon reading and filing the Motion (a) for Order of Contempt Pursuant to Rule 9016

Fed. R. Bankr. P. and Rule 45(e) F. R. Civ. P. and (b) Imposition of Sanctions dated January 5,

2007 ("Motion") together with the exhibits annexed thereto (Doc. No. 68), the Affidavit of Louis

J. Testa sworn to January 5, 2007 in support thereof, Debtor's opposition to Saylavee's Motion

for Contempt together with the exhibits annexed thereto dated February 9, 2007 (Doc. No. 71),

the Supplemental Affidavit of Louis J. Testa in Support of Motion (a) for an Order of Contempt

Pursuant to Rule 9016 Fed. R. Bankr. P. and Rule 45(e) F. R. Civ. P., (b) Imposition of Sanctions

sworn to the 12th day of February, 2007 (Doc. No. 72)  together with the exhibits annexed

thereto, together with due proof of service of each of the foregoing documents, and this matter

having come on for further hearing before this Court on February 13, 2007, (c) Debtor's

Opposition to Motion for Contempt together with exhibits annexed thereto filed with this Court

on February 9, 2007, and (d) Debtor's Memorandum in Opposition to Motion Seeking an Order

of Contempt together with exhibits annexed thereto filed on May 8, 2007, the Affidavit of Louis

J. Testa, Esq. sworn to the 14th day of June, 2007 together with the exhibits annexed thereto, the

Order of this Court dated June 1, 2007 (Doc. No. 90) ("Sanctions Order"), and due deliberation

having been had hereon and good and sufficient cause appearing,

Now, upon Motion of Saylavee, LLC by its counsel, Neubert, Pepe & Monteith, P.C. (by

Louis J. Testa, Esq.) it is hereby

ORDERED, that pursuant to the terms and provisions of the Sanctions Order judgment is

hereby awarded in favor of Saylavee, LLC, 15 East Putnam Avenue, Suite 431, Greenwich,

Connecticut 06830 and against Scott B. Hockler, 12 Penwood Road, Mt. Kisco, New York

10549 in the amount of $18,000.00 and that Saylavee is hereby authorized and permitted to

undertake enforcement hereof.

Dated: White Plains, NY
      June 21, 2007

                            /s/ Adlai S. Hardin, Jr.
                            Hon. Adlai S. Hardin, Jr.
                            United States Bankruptcy Judge
                            Southern District of New York

Enter

# EXHIBIT D

# DREIER LLP

ATTORNEYS AT LAW

The Traub Group

**Steven E. Fox** *Partner*
Direct 212 652 3742
sfox@dreierllp.com

June 26, 2007

**VIA FEDERAL EXPRESS**
Honorable Adlai S. Hardin, Jr.
United States Bankruptcy Judge
United States Bankruptcy Court
300 Quarropas Street
White Plains, New York 10601

    Re:    Ducky Interactive, Inc., Debtor; Case No. 05-23457 (ASH)

Dear Judge Hardin:

    As your Honor will recall, this firm represents Scott B. Hockler ("Mr. Hockler"), the Court-appointed representative of Ducky Interactive, Inc. in connection with certain Rule 2004 Examination matters being conducted by Saylavee, LLC ("Saylavee") in the above referenced matter.

    We have recently learned that this Court has entered an Order, dated June 22, 2007, granting Saylavee's Request for Entry of Judgment against Scott B. Hockler in the amount of $18,000 (the "June 22 Order"), which in turn related to the Court's June 1, 2007 Order (the "June 1 Order") imposing certain sanctions upon Mr. Hockler.

    As the Court may not have been aware, on June 11, 2007 Mr. Hockler filed a Notice of Appeal from the Court's June 1 Order (the "Appeal"). See Notice of Appeal, attached as Exhibit A. Contemporaneous with the filing of the Notice of Appeal, Mr. Hockler also filed a motion with this Court seeking a stay of the June 1 Order pending resolution of the Appeal. Your Honor's Chambers has set that motion for a hearing on July 18, 2007 at 9:45 a.m. See Motion to Stay, attached as Exhibit B. Mr. Hockler has since timely filed his Designation of Record on Appeal and Statement of the Issues, dated June 21, 2007, in the Appeal. See Designation, attached as Exhibit C.

    We respectfully submit that the entry by this Court of the June 22 Order, coming after the timely filing of the Notice of Appeal, was improper and should be vacated under applicable authorities in this and other jurisdictions, as the commencement of the Appeal acts to divest this Court of jurisdiction in connection with matters that are the subject of the Appeal. See, e.g., In re Winomo Realty Corp. v. City of Albany, et al., 270 B.R. 99 (S.D.N.Y. 2001) (citing United States v. Rodgers, 101 F.3d 247, 251 (2d Cir. 1996)

{00268087.DOC;}

Honorable Adlai S. Hardin, Jr.
United States Bankruptcy Judge
June 26, 2007
Page 2 of 2

(filing a notice of appeal has the effect of divesting a lower court of jurisdiction over all issues involved in the appeal)).

Separately, the Court should also be aware that Mr. Hockler and Ducky Interactive, Inc. (the "Debtor") and Mr. Jeffrey Sapir, Esq., Court-appointed Trustee for the Debtor's estate ("Trustee Sapir"), recently entered into a Settlement Agreement on the principal at issue in this bankruptcy. See Settlement Letter, attached as Exhibit D. Trustee Sapir filed this Settlement Agreement with the Court for approval on June 25, 2007. From Mr. Hockler's perspective, the entry of the June 22 Order prior to the resolution of the appellate issues, risks significant interference with the parties' progression towards the parties' consummation of the negotiated comprehensive settlement in this matter.

For the foregoing reasons, Mr. Hockler respectfully requests that this Court vacate the June 22 Order, and, alternatively, enter a judgment granting Mr. Hockler's Motion to Stay Pending Appeal, filed June 11, 2007.

Respectfully submitted,

Steven Fox

cc:    Joseph M. Pastore III, Esq.
       Earl T. Ormond, Esq.
       Mr. Scott Hockler
       Doug Skalka, Esq.
       Louis Testa, Esq.

ORDERED:

BOTH REQUESTS IN THE FINAL PARAGRAPH OF THIS LETTER ARE DENIED.

s/ Adlai S. Hardin, Jr.
United States Bankruptcy Judge

{00268087.DOC;}

# EXHIBIT E



September 28, 2006

Dear Sir or Madam:

Please be advised that Scott Hockler has ordered statements for Ducky Interactive. These statements will be available early next week. If there are any questions, please feel free to call me at 203-629-4022.

Sincerely,

Jonathan Schmid
Vice-President
Banking Center Manager

Recycled Paper

# EXHIBIT F



**Citibank, N.A.**
66 South Moger Avenue
Mount Kisco, NY 10549

September 28, 2006

To Whom It May Concern:

Mr. Scott Hockler today requested bank statements from January 2004 to January 2006 on the Ducky Interactive Inc. account. The request will take up to 10 business days to process.

I will notify him when they are received.

Sincerely,

Richard Vecchione
Business Banking Officer

A member of citigroup

# EXHIBIT G

JEFFREY L. SAPIR
ATTORNEY AT LAW

NOV 27 2006

399 KNOLLWOOD ROAD
SUITE 102
WHITE PLAINS, NY 10603

(914) 328-7272
FAX (914) 328-8608

JODY L. KAVA*
*ADMITTED IN NY & CT

E-MAIL ADDRESS
info@sapirlaw.com

November 22, 2006

Drier LLP
One Landmark Square
20th Floor
Stamford, Conn. 06901
Att: Earl T. Ormond, Esq.

Re: Ducky Interactive Inc.
Case No. 05-23457

Dear Mr. Ormond:

      In response to your faxed letter of November 20, 2006, be advised that my photo machine was fixed late yesterday, so the first opportunity to send you the document was today. As such I enclose copies of 191 checks. In addition, I enclose copies of checks not turned over but picked up at the premises (copies starting with 2081 and ending at 2240)

      Your suggestion of making copies at a copy center and sending them by Federal Express is a good one. However, your client did not offer to pay for my time and expense of doing same. The bankruptcy estate cannot bear the expense of your client's obligation. I am doing your client the favor.

      In response to your characterization of the words used by opposing counsel as sparse or negligible to show the amount of checks turned over is inappropriate. I think sparse and negligible gives your client credit for turning over some documents. Considering all the transactions on the bank statements the documents were sparse to say the least. Not one checkbook was turned over to the trustee

      I hope I have saved Mr. Hockler some money by assisting him with the enclosed copies.

                  Very truly yours,

                  Jeffrey L. Sapir

SH 2639

# EXHIBIT H

| WITHDRAWAL<br>JD-CV-41 Rev. 10-01 | STATE OF CONNECTICUT<br>SUPERIOR COURT<br>www.jud.state.ct.us | DOCKET NO.<br>X08CV054002987S<br>RETURN DATE |
|---|---|---|

**COMPLETE ALL SECTIONS BELOW**

NAME OF CASE (FIRST-NAMED PLAINTIFF VS. FIRST-NAMED DEFENDANT)
*Hoehle v. Lichtman*

☒ Judicial District   ☐ Housing Session   ☐ G.A. No.   ADDRESS OF COURT (No., street, town and zip code) *Stamford (123 Hoyt Street)*

**SECTION I.** *THIS WITHDRAWAL IS BEING FILED BECAUSE THE DISPUTE HAS BEEN RESOLVED*

### I. COURT-ANNEXED ADR

- 411088 ☐ Early Intervention
- 411089 ☐ Early Neutral Evaluation
- 411090 ☐ Attorney Trial Referee
- 411091 ☐ Fact-Finding
- 411093 ☐ Arbitration
- 411094 ☐ Mediation
- 411095 ☐ Special Masters
- 411096 ☐ Summary Jury Trial

### II. COURT INTERVENTION

- 411098 ☐ Pretrial Conference
- 411099 ☒ Trial Management Conference
- 411100 ☐ Commencement of Trial   (court trial - first witness sworn; jury trial - trial jurors sworn)

### III. PRIVATE ADR

- 411102 ☐ Provider Name:

### IV. OTHER

- 411103 ☐ Discussion of Parties on Their Own
- 415602 ☐ Unilateral Action of Party(ies)

**SECTION II.** *WITHDRAWAL*

*(Do not check the following two boxes if any intervening complaints, cross complaints, counterclaims, or third party complaints remain pending in this case. See below for partial withdrawal of action.)* ---- **DISPOSITIVE**

(WDACT) ☒ The Plaintiff's action is WITHDRAWN AS TO ALL DEFENDANTS without costs to any party. *or prejudice* *(or fees)*

(WOARD) ☐ A judgment has been rendered against Defendant(s): _____

and the Plaintiff's action is WITHDRAWN AS TO ALL REMAINING DEFENDANTS without costs.

**PARTIAL**

The
- (WDCOMP) ☐ Complaint
- (WDCOUNT) ☐ Counts of the complaint: _____
- (WDINTCO) ☐ Intervening Complaint
- (WDTHPC) ☐ Third Party Complaint
- (WAPPCOM) ☐ Apportionment Complaint
- (WDCC) ☐ Cross Complaint (cross claim)
- (WOC) ☒ Counterclaim *with prejudice without costs of fees being party*
- (WOAAP) ☒ Plaintiff(s):
- (WOAAD) ☐ Complaint against defendant(s): _____ only w/o costs
- ☐ Other: _____

in the above entitled action is withdrawn.

*[stamp, right margin: SUPERIOR COURT STAMFORD-NORWALK JUDICIAL DISTRICT 2005 NOV 21 P 2:08]*

**SIGNATURE REQUIRED**

| Plaintiff | *Scott B. Hochler* | ; By | *[signature]* | Attorney |
| Plaintiff | | ; By | | Attorney |
| Defendant | | ; By | *[signature] Timothy G. Rowan* | Attorney |
| Defendant | | ; By | | Attorney |

NAME & ADDRESS OF SIGNER *[signature]*   *Timothy G. Rowan*

**SECTION III.** *CERTIFICATION*

I hereby certify that a copy was mailed/delivered to all counsel and pro se parties of record on:

DATE *11/21/05*

SIGNED (Individual attorney or pro se party) X *[signature]*

PHONE NO. (Area code first) *203-405-9500*

NAME OF EACH PARTY SERVED *Tim Rowan Pullman & Comley*

ADDRESS AT WHICH SERVICE WAS MADE *In person By Hand*

* If necessary, attach additional sheet with names of each party served and the address at which service was made.

# EXHIBIT I

Saylavee v. Hockler

10/5/2005

Hearing

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


SAYLAVEE, LLC, and STEVEN LICHTMAN )
         Plaintiff )  3:04CV1344 (CFD)
VS )  October 5, 2005
         Defendant )  Federal Building
SCOTT HOCKLER and DUCKY INTERACTIVE, )  Hartford, Connecticut
INC. and DUCKY INTERACTIVE, LLC. )


PREJUDGMENT REMEDY HEARING HELD BEFORE
THOMAS P. SMITH, U.S.D.J.


Wendy J. Allen, RPR
Brandon Smith Reporting Service
44 Capitol Avenue
Hartford, CT  06106
(860) 549-1850

Brandon Smith Reporting

57fb2624-7a3c-4ccc-8c08-2dc800d79120

Saylavee v. Hockler

10/5/2005                                                          Hearing

---

**Page 78**

1  Saylavee for any negative comments to exercise teachers
2  about Mr. Lichtman?
3      A   Yes, I believe I was.
4      Q   Ms. Glatzer, are you still in a lawsuit with
5  Saylavee, LLC, the plaintiff in this action?
6      A   Yes, I am.
7      Q   Ms. Glatzer, you were shown Defendant's
8  Exhibit I, which was a complaint that I caused to be
9  served on you on behalf of Saylavee. Do you have that
10 in front of you?
11     A   Yes, sir, I do.
12     Q   Do you recall letters that I sent to you
13 before that action was filed concerning the subject
14 matter of the action which was the transfer of your
15 interest in the Mount Kisco studio to Saylavee, LLC, my
16 client?
17     A   I recall e-mails or letters, yes.
18     Q   Do you recall that those letters were sent to
19 you by Federal Express but you didn't respond to me in
20 response to those letters?
21     A   Probably because I was given counsel not to.
22     Q   Who gave you the counsel not to respond to my
23 letters, the pre-lawsuit letters, ma'am? Just the name
24 of the attorney who gave you that, not the substance.
25     A   I don't recall.

---

**Page 79**

1      Q   Did Mr. Hockler ever tell you not to respond
2  to my letters?
3      A   No, he did not.
4      Q   You never responded to my letters and then you
5  got served with that first lawsuit, correct?
6      A   I thought the lawsuit — didn't the lawsuit
7  come -- you know what, I've been through so much with
8  these two people, I absolutely don't remember what came
9  first. I really don't.
10     Q   Do you recall retaining the services of an
11 Attorney Gary Klein after the lawsuit was filed?
12     A   Yes.
13     Q   How soon was the lawsuit resolved after you
14 retained the services of Mr. Klein?
15     A   Very quickly. Very quickly.
16     MR. RONAN:  No further questions; Your
17 Honor.
18     THE COURT:  Thank you. Mr. Pastore.
19     MR. PASTORE:  No further questions, Your
20 Honor.
21     THE COURT:  Thank you, Ms. Glatzer, you
22 may step down.
23     MR. PASTORE:  May we return to Mr.
24 Lichtman for cross?
25     THE COURT:  Yes. Mr. Lichtman.

---

**Page 80**

1      You were sworn previously and you remain
2  under oath, sir.
3      Begin your cross-examination, Mr.
4  Pastore.
5
6      CROSS-EXAMINATION BY MR. PASTORE:
7
8      Q   Good afternoon, Mr. Lichtman.
9      A   Good afternoon.
10     Q   Is it correct that Saylavee has sued Ms.
11 Glatzer twice?
12     A   Yes.
13     Q   And the second time was after a release was
14 given to her?
15     A   The events that took place that are the
16 subject of the second suit took place after the release.
17     Q   So the release was given and then the second
18 suit was filed against Ms. Glatzer?
19     A   For events that happened subsequent to the
20 release.
21     Q   Do you have the exhibits that you testified to
22 earlier up there, sir?
23     A   I believe I do, yes. At least some of them.
24     Q   Now, it's correct, sir, that for a period of
25 time you worked in connection with the Connecticut

---

**Page 81**

1  studios?
2      A   Yes.
3      Q   And during that time is it, in fact, correct
4  that you had certain bills transferred into the name of
5  Saylavee for those Connecticut studios?
6      A   Yes.
7      Q   And certain bills transferred into the name of
8  Bodyfit for those Connecticut studios?
9      A   That was the name of those studios at that
10 point.
11     Q   And that you effectuated or caused people to
12 effectuate the change of the billing address for the
13 studios; sir, the change of the billing entity for these
14 studios?
15     A   I'm sorry, can you repeat that again?
16     Q   Sure. You told the water company, for
17 example; no longer bill Ducky Interactive, Inc., bill
18 Saylavee for the water bill.
19     A   Everything was sent to Bodyfit to my office
20 for bills to be paid during that time.
21     Q   So sir, turning to Exhibits 1, 2, 3 and 4,
22 it's fair to say that the AmEx bills put into the name
23 of Saylavee, LLC, Bodyfit, New Canaan, that was done by
24 you?
25     A   During the three month period or so that I was

---

21 (Pages 78 to 81)

Saylavee v. Hockler

10/5/2005                                                          Hearing

---

**Page 174**

1   MR. PASTORE: Move this as a full
2   exhibit.
3       THE COURT: Okay, and generically what do
4   you say this is, Mr. Pastore?
5       MR. PASTORE: It's an e-mail, subject,
6   ad.
7       THE COURT: Okay. From whom to whom?
8       MR. PASTORE: From Eve Taben, T-A-B-E-N,
9   to Steve Lichtman, cc, Duck2232@aol.com and Stone, Pam.
10      THE COURT: Okay. Offered as a full
11  exhibit?
12      MR. PASTORE: Yes, Your Honor.
13      MR. RONAN: No objection subject to the
14  clarification that it contains an embedded e-mail that's
15  dated April 18 from Eve Taben to Steve Lichtman.
16      MR. PASTORE: I apologize. Yes, Your
17  Honor.
18      THE COURT: Okay.
19  How are we rolling, Mr. Pastore?
20      MR. PASTORE: I have outline that's 40
21  pages long, I'm on page 30, so I would say another half
22  hour. Maybe a lot of the end is stuff that probably
23  gets buzzed through,
24      THE COURT: This is the point at which we
25  normally take our mid-afternoon break, so 3:30, I

---

**Page 175**

1   suggest we take our break until 3:45, and we'll resume
2   then.
3       MR. PASTORE: And I will move as
4   expeditiously as I can.
5       THE COURT: That's fine, take your time,
6   Mr. Pastore.
7       (Recess.)
8       THE COURT: Afternoon. Please be seated.
9   Mr. Pastore, let's begin.
10  BY MR. PASTORE:
11      Q  Sir, isn't it in fact true that at the outset
12  of your relationship with Ducky and/or Mr. Hockler that
13  there was no discussion of an operating agreement?
14      A  No.
15      Q  Didn't you testify at the bankruptcy
16  proceeding that initially you didn't really care about
17  an agreement, over time you became more concerned and
18  started to demand an agreement?
19      A  I didn't care that an agreement wasn't present
20  and signed when I started working with him. That didn't
21  mean that I didn't care about it.
22      Q  Sir, isn't it in fact true that your behavior
23  at the exercise studios was becoming a problem?
24      A  No.
25      Q  Isn't it in fact true that you would yell at

---

**Page 176**

1   teachers?
2       A  No.
3       Q  That you sent a woman by the name of Erica
4   home crying on several occasions?
5       A  No.
6       Q  Isn't it in fact true that you yelled at
7   customers?
8       A  Never.
9       Q  That you sent a customer by the name of Susan
10  Berger out crying from the studios?
11      A  Scott had a problem with Susan Berger and
12  called her to ask her not to come back to the studio.
13      Q  And you didn't cause her to leave crying?
14      A  And she asked for a return call from someone,
15  it actually happened with other people present, and that
16  was that. I had nothing -- I had no idea who Sue Berger
17  was, still have never met her.
18      Q  Ms. Glatzer testified earlier today that you
19  had a demeaning way of treating teachers. Is that true?
20      A  No, it's not true.
21      Q  Do you believe you were demeaning in any way
22  in your discussions with Ms. Stone, for example?
23      A  Ms. Stone had nothing to do with anything that
24  I had created here other than the fact that she was
25  going to be selling these businesses for a great deal of

---

**Page 177**

1   money because this is what her job was. My agreement
2   was with Scott, it had nothing to do with Pam, and all
3   of a sudden Pam interjected herself into this a month or
4   six weeks in, and Scott kept telling me, don't worry
5   about Pam, have nothing to do with Pam.
6       Q  Why is it, then, that you're now threatening
7   to sue her?
8       A  Because Pam made representations at the
9   bankruptcy hearing that she was not, she does not sell
10  businesses for a living or have anything remotely to do
11  with everything that she claimed to do that, you know,
12  helped to induce me into getting involved with Scott.
13      Q  She testified she works for an investment
14  bank, correct, sir?
15      A  Yes.
16      Q  And you have sent her through your counsel,
17  have sent inquiry as to whether or not we would be
18  willing to accept service for a new lawsuit against her
19  that you intend to initiate?
20      A  I don't know what my lawyer has sent you.
21      Q  Have you directed your lawyer to make
22  inquiries concerning a lawsuit against Ms. Stone?
23      A  That is something that is possible.
24      Q  Even though you say she had nothing to do with
25  the businesses?

---

45 (Pages 174 to 177)

Brandon Smith Reporting

# Saylavee v. Hockler

10/17/2005                                                                    Hearing

|  | Page 340 |
|---|---|
| 1 | correspondence I'll ferret out, I apologize for that. |
| 2 | THE COURT: That's all right, you take |
| 3 | your time. We'll be back at quarter after 1. |
| 4 | MR. RONAN: Thank you, Your Honor. |
| 13:20 5 | THE COURT: All right. |
| 6 | MR. RONAN: Your Honor, may counsel |
| 7 | address the Court with respect to plaintiff's |
| 8 | application for a prejudgment remedy? |
| 9 | THE COURT: Yes. |
| 13:20 10 | MR. RONAN: Your Honor, during the break |
| 11 | Mr. Pastore and I have had some discussions, and I have |
| 12 | heard from Mr. Pastore that his client is willing to |
| 13 | make representation that he has no assets that are |
| 14 | subject to attachment in the state of Connecticut. |
| 13:20 15 | Under the circumstances, counsel feel it's wise not to |
| 16 | tie up this court or these witnesses with further |
| 17 | proceedings unless and until I discover or counsel |
| 18 | discloses that there would be something that could be |
| 19 | subject to attachment in this case. We have another |
| 13:20 20 | agreement with respect to that -- Mr. Pastore, I guess, |
| 21 | has to make the representation on the record on behalf |
| 22 | of his client. |
| 23 | MR. PASTORE: Your Honor, I do make the |
| 24 | representation that in discussions with my client it's |
| 13:20 25 | my understanding he's committed to me there's no assets |

|  | Page 342 |
|---|---|
| 1 | prejudice. |
| 2 | MR. RONAN: If prejudice means that we |
| 3 | would not have been entitled to it or could not have |
| 4 | shown that we would be entitled to it, then, Your Honor, |
| 13:20 5 | no, but with prejudice to our making an agreement on |
| 6 | this record that I won't bring it again, yes, Your |
| 7 | Honor. |
| 8 | THE COURT: Okay, that's what I mean, the |
| 9 | latter. |
| 13:20 10 | MR. RONAN: Thank you, Your Honor. |
| 11 | THE COURT: Having sat through this for |
| 12 | how many days? |
| 13 | MR. RONAN: Many, many hours, Your Honor. |
| 14 | THE COURT: Yes. All right. So that |
| 13:20 15 | leaves the motion with respect to the stay pending? |
| 16 | MR. RONAN: That's correct, Your Honor. |
| 17 | THE COURT: Well, I suppose I'll have to |
| 18 | look at that. I mean is there some incongruity between |
| 19 | you on one hand asking for a stay and on the other hand |
| 13:20 20 | asking for a settlement conference? |
| 21 | MR. PASTORE: I don't think there's an |
| 22 | incongruity between the settlement conference and the |
| 23 | stay, Your Honor, because you can settle part of the |
| 24 | claims in the case that may not affect the bankruptcy. |
| 13:21 25 | THE COURT: Well, we'll have a settlement |

|  | Page 341 |
|---|---|
| 1 | in the state of Connecticut subject to attachment. The |
| 2 | other part of the agreement is that we've requested, as |
| 3 | we have continuously in this case, a settlement |
| 4 | conference before a federal magistrate, and Mr. Ronan |
| 13:20 5 | has agreed within -- we've requested a settlement |
| 6 | conference within the reasonable near future, as the |
| 7 | court can be available, with a federal magistrate, as a |
| 8 | condition to accepting the withdrawal of the PJR. |
| 9 | THE COURT: Wait a minute, as a condition |
| 13:20 10 | to accepting the withdrawal? |
| 11 | MR. PASTORE: I don't mean -- |
| 12 | THE COURT: You're withdrawing your PJR? |
| 13 | MR. RONAN: We're withdrawing our PJR, |
| 14 | Your Honor. |
| 13:20 15 | THE COURT: I don't know if I'm going to |
| 16 | accept it as a withdrawn PJR. I mean this just, you |
| 17 | have relegated unto yourself the power to bring it back |
| 18 | to life and resuscitate it at any point you want thereby |
| 19 | giving you control over my schedule, is that what you're |
| 13:20 20 | intending to do? I mean what's the -- |
| 21 | MR. RONAN: No, Your Honor, that was. |
| 22 | THE COURT: You no longer are pursuing |
| 23 | the PJR? |
| 24 | MR. RONAN: Yes, Your Honor. |
| 13:20 25 | THE COURT: And it's withdrawn with |

|  | Page 343 |
|---|---|
| 1 | conference this afternoon. Okay? |
| 2 | MR. PASTORE: Fine with me, Your Honor. |
| 3 | I think Mr. Ronan would prefer to have it with a |
| 4 | different magistrate only because you've heard the case. |
| 13:22 5 | THE COURT: Would you prefer to have it |
| 6 | with someone else? |
| 7 | MR. RONAN: Your Honor, you've heard half |
| 8 | the case, we're pulling back before you've heard the |
| 9 | rest of it, and that's why we felt that -- |
| 13:22 10 | THE COURT: No hard feelings at all. |
| 11 | MR. RONAN: Your Honor, you've sat |
| 12 | through a lot of this, we'd like you to hear the rest of |
| 13 | it, and maybe some day if we settle it we'll have a chat |
| 14 | about it, but Your Honor -- |
| 13:22 15 | THE COURT: I doubt that, Mr. Ronan. |
| 16 | MR. RONAN: I can understand Your Honor's |
| 17 | point of view. |
| 18 | THE COURT: So the application without |
| 19 | objection is withdrawn. |
| 13:22 20 | MR. PASTORE: Thank you, Your Honor. |
| 21 | THE COURT: I will get to the pending |
| 22 | motion, which I've looked at the docket sheet in this |
| 23 | case, and this case was referred to me for all purposes |
| 24 | before the motion for the stay was pending. I don't |
| 13:22 25 | know if the motion for a stay would fall within the |

29 (Pages 340 to 343)

Saylavee v. Hockler

10/5/2005                                                    Hearing

Page 230

1         CERTIFICATE

2

3

4      I, WENDY J. ALLEN, Registered Professional

5   Reporter, do hereby certify that the foregoing testimony

6   is a true and accurate transcription of my stenographic

7   notes to the best of my knowledge and ability.

8

9      WITNESS MY HAND this 17th day of October, 2005.

10

11

12

13

14

15

16

17

18

19      _____

20      Wendy J. Allen, RPR

21

22

23

24

25

59  (Page 230)

Brandon Smith Reporting

57fb2824-2a3c-4ecc-8c08-2dc800d79120

# EXHIBIT J

Case 7:07-cv-06410-SCB    Document 4-2    Filed 08/02/2007    Page 31 of 35
Case 3:04-cv-01344-CFD    Document 224-12    Filed 06/18/2007    Page 4 of 4
02/08/2007 22:01 FAX 203 4259500                DREIER LLP                    ☒054

Saylavee, LLC v. Hockler, et al.                              February 15, 2005

Page 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT ON CONNECTICUT

- - - - - - - - - - - - - - - - -X

SAYLAVEE, LLC and STEVEN LICHTMAN,

           PLAINTIFF,

        vs.                    CIVIL ACTION NO.:
                               3:04 CV 1344 (CFD)
SCOTT B. HOCKLER, d/b/a DUCKY
INTERACTIVE, INC. and DUCKY
INTERACTIVE, LLC,

           DEFENDANT.
- - - - - - - - - - - - - - - - -X

DUCKY INTERACTIVE, INC. and
SCOTT B. HOCKLER,

           PLAINTIFF,

        vs.                    CIVIL ACTION NO.:
                               3:04 CV 1500 (PCD)
SAYLAVEE, LLC and STEVEN LICHTMAN,

           DEFENDANT.
- - - - - - - - - - - - - - - - -X


D E P O S I T I O N

The deposition of HOLLY WEISMANN was taken
pursuant to notice at the law offices of Pullman &
Comley, 300 Atlantic Street, Stamford, Connecticut,
before Viktoria V. Stockmal, license #00251, a notary
public in and for the State of Connecticut, on Tuesday,
February 15, 2005, at 10:02 a.m.

SANDERS, GALE & RUSSELL
203-624-4157

Saylavee, LLC v. Hockler, et al.                February 15, 2005

Page 138

1  A  No.
2  Q  Has Mr. Hockler ever told you about having a
3  studio in Mount Kisco, New York, where he lives?
4  A  When you -- excuse me. Can we go back.
5  Q  Go ahead.
6  A  When you said New York, are you talking
7  about New York City or -- that's what I thought you were
8  talking about.
9  Q  I was trying to clarify that. Let me try
10  and ask you another question.
11  A  Okay.
12  Q  Has Mr. Hockler ever told you anything about
13  having an interest in a fitness studio in Mount Kisco,
14  New York?
15  A  Yes.
16  Q  What did Mr. Hockler tell you about that?
17  A  One of the studios that he has is in Mount
18  Kisco.
19  Q  Has he ever told you what he paid for that
20  studio?
21  A  No.
22  Q  Have you ever visited that studio?
23  A  Never.
24  Q  Has he ever told you that, until recently,
25  he took classes at that studio?

Page 139

1  A  No.
2  Q  Do you know where Mr. Hockler lives?
3  A  I know his address.
4  Q  Have you ever been to that house?
5  A  No.
6  Q  Has Mr. Hockler ever told you that he takes
7  fitness classes at the studios with his wife, Pam Stone?
8  A  No.
9  Q  I think the answer was no, correct?
10  A  No.
11  MS. BRAXTON: Objection.
12  BY MR. RONAN:
13  Q  Have you ever met Pam Stone?
14  A  Yes.
15  Q  On how many occasions have you met Pam
16  Stone?
17  A  Once.
18  Q  Where was that?
19  A  While I was crossing a street in New York
20  City.
21  Q  I asked you before about the Connecticut
22  studios. Have you ever been to the Mount Kisco exercise
23  studio?
24  A  Never.
25  Q  Is there any particular reason why you don't

Page 140

1  go to the exercise studios?
2  MS. BRAXTON: Objection.
3  BY THE WITNESS:
4  A  I exercise at home.
5  Q  Are there any continuing discussions about
6  you going to work for Mr. Hockler or one of his
7  companies?
8  A  Not at this time.
9  Q  Where does that stand? Is there an offer
10  out to you or -- could you tell us where that stands?
11  MR. HIGGINS: Objection. I'm going
12  to object here and I'm going to request, although not
13  instruct, because I don't represent this witness, but
14  that she not answer at that question. I don't see how
15  this is a license for you to inquire as to this
16  witness or anyone else as to any of Mr. Hockler's
17  business interests. And I've sat here and I've given
18  you the widest possible berth to ask all of your
19  questions, no matter how far removed from the
20  substance of this case. But I think this is where
21  it's so far over the line.
22  MS. BRAXTON: I'll accommodate and
23  instruct her not to answer.
24  MR. HIGGINS: I object. I think it's
25  outside the scope of permissible discovery. And I'm,

Page 141

1  again, requesting her, although I have no business
2  instructing her, not to answer that question.
3  MS. BRAXTON: I will instruct her not
4  to answer.
5  MR. RONAN: Okay, whether or not this
6  witness has received an offer to work for one of Mr.
7  Hockler's companies for the amount of $500,000 as she
8  may have told other people is something which goes to
9  the bias of this witness who arrived in the company of
10  Mr. Hockler and a close friend's police officer friend
11  from New Bedford at my offices. There's a close
12  relationship there and it goes to bias. That's why
13  I've asked the question. It's a simple yes or no.
14  MR. HIGGINS: It's not while you
15  asked the question.
16  MS. BRAXTON: It's --
17  (People spoke at the same time.)
18  MR. HIGGINS: You established they
19  are close personal friends. You established that in
20  many, many different contexts. Nobody disputes that.
21  That's not a serious question. I don't believe that
22  that gives you a license to ask her about anything
23  possible relating to Mr. Hockler, relating Mr.
24  Hockler's business. Whether or not it has any
25  relevance to this case, under the guise of bias.

36 (Pages 138 to 141)

Saylavee, LLC v. Hockler, et al.                          February 15, 2005

Page 170

1   not going to let you continue.
2        MR. RONAN: Counsel is now going to
3   find out that I am adjourning these proceeding with no
4   more questions for this witness at this time until we
5   seek Court orders requiring her to comply with the
6   subpoena that was delivered to her which requires her
7   to testify fully and fairly in connection with the
8   matter before the Court.
9        MS. BRAXTON: Mr. Ronan --
10       MR. RONAN: Each one of the questions
11  that I have given to the witness was calculated --
12       MS. BRAXTON: I demand --
13       MR. RONAN: -- to lead to the
14  discovery of admissible evidence and therefore --
15       MS. BRAXTON: Do you have any further
16  questions of this witness?
17       MR. RONAN: Yes, I do.
18       MS. BRAXTON: Then please put them on
19  the record right now.
20       MR. RONAN: You have interrupted me
21  in connection with the --
22       MS. BRAXTON: No, I haven't.
23       MR. RONAN: -- last three questions
24  that I put to the witness and the court reporter can
25  testify to that. You have interrupted these

Page 171

1   proceedings and even dropped down to throwing
2   documents at me.
3        MS. BRAXTON: No, I haven't.
4        MR. RONAN: We will be back here to
5   pursue with this witness --
6        MS. BRAXTON: Attorney Ronan --
7        MR. RONAN: We will be back here --
8        MS. BRAXTON: -- you are harassing
9   this witness.
10       MR. RONAN: We will be back here --
11  No, Counsel, you are.
12       MS. BRAXTON: You are.
13       MR. RONAN: We will be back here to
14  pursue with this witness the documents that she has
15  failed to search for adequately and to bring to this
16  deposition. We'll be back here to review with this
17  witness the questions which the Court requires her to
18  answer and the questions which follow from those.
19       MS. BRAXTON: Attorney Ronan --
20       MR. RONAN: And the questions which
21  follow from the documents that this witness --
22       MS. BRAXTON: I want the record to
23  reflect -- I want the record to reflect --
24       MR. RONAN: Please do.
25       MS. BRAXTON: -- that this paragraph

Page 172

1   actually says nothing about going to look at houses.
2   And that nothing in this complaint says anything about
3   going to look at houses. And that those questions,
4   like so many other in this deposition, have nothing to
5   do with what the causes of action are in this
6   complaint. This complaint is over 40 pages mostly of
7   side show stuff that has nothing to do with what your
8   client's complaint is against Mr. Hockler.
9        You have brought this witness in and
10  kept her all day by asking her questions that are way
11  far afield of what this cause of action is. Now I
12  suggest that you ask her everything else that you have
13  so that we can have a nice clean motion before the
14  court and figure out exactly what else needs to be
15  done with this witness.
16       MR. RONAN: We're adjourned.
17       THE WITNESS: You know something, how
18  predictable could that have been.
19       MR. RONAN: Let's go off the
20  record --
21       MR. HIGGINS: Before we go off the
22  record, I just want to say, if there are further Court
23  orders regarding additional documents that need to be
24  produced or regarding additional questions that need
25  to be answered or questions that have been asked that

Page 173

1   were not answered, so be it. But I -- our position is
2   going to be that any further questioning of this
3   witness is going to be limited to that and it's not --
4   to the extent you have other questions, you need to
5   ask them now.
6        MS. BRAXTON: If you have any new
7   questions, I suggest you ask them now and if there are
8   objections, we can resolve them with a Court. But you
9   will not be able to come back and ask her a bunch of
10  new questions that haven't been addressed.
11       MR. RONAN: We are adjourned.
12       THE VIDEOGRAPHER: Going off the
13  record at 3:04.
14
15            * * * * *
16
...
25

44  (Pages 170 to 173)

SANDERS, GALE & RUSSELL
203-624-4157

# EXHIBIT K

{ }                                         ( )

WEINSTEIN, WEINER, IGNAL, NAPOLITANO & SHAPIRO, P.C.  •  ATTORNEYS AT LAW  •  JURIS NO. 68912
350 FAIRFIELD AVENUE  •  P.O. BOX 9177  •  BRIDGEPORT CONNECTICUT 06601  •  (203) 333-1177

RETURN DATE:            :        SUPERIOR COURT

PULLMAN & COMLEY, LLC   :        JUDICIAL DISTRICT OF STAMFORD/NORWALK

V.                      :        AT STAMFORD

STEVEN LICHTMAN, ET AL  :        July 5, 2006

## C O M P L A I N T

**First Count:**

1.  The plaintiff, Pullman & Comley, LLC, is a law firm with a place of business of 850 Main Street,

    Bridgeport, Connecticut. The transactions described herein are commercial in nature.

2.  Upon information and belief, at all times mentioned in this complaint, the defendant Steven

    Lichtman was a individual with a residence at 15 Andrews Farm Road, Greenwich, Connecticut.

3.  Upon information and belief, at all times mentioned in this complaint, the defendant Saylavee, LLC

    was a limited liability company with a place of business c/o Renaissance Ventures, One

    Soundshore Drive, Suite 305, Greenwich, Connecticut 06830.

4.  The plaintiff and the defendants entered into an agreement under the terms of which the plaintiff

    agreed to represent the defendants in connection with a partnership dispute in exchange for

    compensation. A copy of the agreement is attached as Exhibit A. The Plaintiff will refer to

    Exhibits A as the "Agreement."

5.  Pullman & Comley, LLC performed all the conditions of the Agreement on its part.

6.  There is justly due and owing to the plaintiff under the terms of the Agreement the sum of