**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————

In re:  Ducky Interactive, Inc                    Case No. 05-23457
                                                  (Chapter 7)
                              Debtor.

——————————————————————

Scott B. Hockler,
                              Appellant.          No. 07-civ-6410-(SCR)
vs.
                                                  Before Hon. Stephen C. Robinson
Steven Lichtman and Saylavee LLC,

                              Appellees.

——————————————————————


**<u>BRIEF OF APPELLEE</u>**


Dated: August 31, 2007          Louis J. Testa, Esq. (LT2213)
                                Neubert, Pepe & Monteith, P.C.
                                195 Church Street, 13th Floor
                                New Haven, Connecticut 06510
                                203.821.2000 PH / 203.821.2008 FX
                                Attorneys for Appellees, Steven Lichtman
                                and Saylavee, LLC

## **<u>Table of Contents</u>**

Table of Authorities ...................................................................................................ii, iii

Introduction ...............................................................................................................1

Jurisdictional Statement ...........................................................................................1

Standard of Review ...................................................................................................1

Statement of the Case ...........................................................................................1, 2

Argument ...................................................................................................................4
      **A.  Bankruptcy Court found that Hockler's failure to obey the Subpoena
         was without adequate excuse.** ......................................................................4
      **B.  Appellant's arguments are more properly grounds for the remedies of
         a Protective Order, or Motion to Quash and have been waived** ...............15
      **C.  Certain matters asserted by Hockler in Section III of the Appellant's
         Brief should not be considered part of the Record on Appeal**..................17
      **D.  Alleged misrepresentations of counsel** .........................................................17

Conclusion ...............................................................................................................18

## <u>Table of Authorities</u>

<u>Cases</u>

1.    <u>In re Godt</u>
      282 B.R. 577 (Bankr. E.D.N.Y. 2002)................................................................1,11

2.    <u>In re Arochem Corp.</u>
      176 F.3d 610 (2d Cir. 1999)....................................................................1

3.    <u>In re Bennett Funding Group, Inc.</u>
      146 F.3d 136 (2d Cir. 1998) ...................................................................1

4.    <u>In re Sealed Case</u>
      141 F.3d 337 (D.C. Cir. 1998)...............................................................10

5.    <u>Public Service Co. of New Hampshire v. Poland Natural Gas</u>
      128 F.R.D. 361 (D.N.H. 2003) ..............................................................10

6.    <u>Cruz v. Meachum</u>
      159 F.R.D. 366 (D.Conn. 1994)............................................................11

7.    <u>In re Chateauguy Corporation</u>
      64 B.R. 990 (S.D.N.Y. 1996)................................................................17


<u>Federal and State Laws, Rules and Regulations</u>

1.  Rule 8010(a)(2) Fed. R. Bankr. P. .........................................................1

2.  28 U.S.C. § 158(a). ...............................................................................1

3.  28 U.S.C. §§ 1334(a) and (b). ...............................................................1

4.  Rule 8013 Fed. R. Bankr. P. ..................................................................1

5.  Rule 2001(5)(A) Fed.R.Bankr.P. ...........................................................2

6.  Rule 2004(c) Fed.R.Bankr.P. .............................................................2, 4

7.  Rule 45 F.R.Civ.P. ........................................................................2, 4, 18

8.  Rule 9016 Fed.R.Bankr.P. ................................................................2, 4

9.  11 U.S.C. § 546(a)(1)(A) ......................................................................9

10. Rule 45(c) F.R.Civ.P ........................................................................................15

11. Rule 45(c)(1)F.R.Civ.P ....................................................................................16

12. Rule 26(c) F.R.Civ.P ........................................................................................16

13. Rule 9014(c) Fed.R.Bankr.P. ...........................................................................16

## INTRODUCTION

Appellees, Steven Lichtman and Saylavee, LLC (collectively "Appellee" or "Saylavee") respectfully submit the following brief pursuant to Rule 8010(a)(2) Fed. R. Bankr. P.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction to entertain this appeal under 28 U.S.C. § 158(a) and 28 U.S.C. §§ 1334(a) and (b).

## STANDARDS OF REVIEW

A District Court hearing an appeal from a Bankruptcy Court reviews findings of fact, whether based on oral or documentary evidence, under the "clearly erroneous" standard. Rule 8013 of the Federal Rules of Bankruptcy Procedure, ("Fed.R.Bankr.P."); In re Godt, 282 B.R. 577 (Bankr. E.D.N.Y. 2002).

Conclusions of Law, however, are reviewed under the "de novo" standard. In re Arochem Corp., 176 F.3d. 610 (2d Cir. 1999); In re Bennett Funding Group, Inc., 146 F.3d. 136 (2d Cir. 1998).

## STATEMENT OF THE CASE

On July 8, 2005 Ducky Interactive, Inc. ("Debtor") filed a voluntary petition in bankruptcy under Title 11, Chapter 7, U.S.C. in the United States Bankruptcy Court ("Court") for the Southern District of New York ("Bankruptcy Case").

On September 19, 2005, Saylavee filed a Motion (Doc. ID No. 16)[1] seeking authorization to conduct the examination of the Debtor pursuant to Rule 2004 Fed.R.Bankr.P. ("2004 Exam"). On November 9, 2005 the Bankruptcy Court entered an

---

[1] Unless otherwise stated, all references to Docket Numbers shall mean the docket maintained in the Bankruptcy Case.

Order (Doc. ID No. 24) pursuant to which Saylavee was authorized to take the examination of the Debtor and Scott B. Hockler ("Hockler" or "Appellant") was designated as the representative of the Debtor pursuant to Rule 2001(5)(A) Fed.R.Bankr.P.

On April 29, 2006, Hockler was served with a subpoena for Rule 2004 Examination ("Subpoena") pursuant to Rules 2004(c) and 9016 Fed.R.Bankr.P. and Rule 45 F.R.Civ.P. Among other things, the Subpoena commanded the production of certain documents identified on Schedule A thereto, which Saylavee reasonably required to properly conduct the Rule 2004 Exam.

On August 22, 2006, due to the failure of the Debtor and Hockler to comply with the mandates of the Subpoena, Saylavee filed a Motion (a) To Compel Production of Documents Pursuant to Rule 9016 Fed.R.Bankr.P. and Rule 45(c)(2) F.R. Civ.P., and (b) For Order of Contempt Pursuant to Rule 9016 Fed.R.Bankr.P. and Rule 45(e) F.R.Civ.P. (Docket ID No. 30) ("Motion to Compel"). On September 28, 2006 the Court held a hearing on the Motion to Compel ("First Hearing"). On October 11, 2006 the Court entered an Order (Docket ID No. 50) ("First Order") granting the relief requested in the Motion to Compel and scheduling a further hearing on the Motion to Compel for November 7, 2006 ("Second Hearing").

On November 3, 2006 in anticipation of the Second Hearing, Saylavee filed a Supplemental Affidavit in Support of Motion (a) To Compel Production of Documents Pursuant to Rule 9016 Fed.R.Bankr.P. and Rule 45(c)(2)(B) F.R.Civ.P., and (b) For Order of Contempt Pursuant to Rule 9016 Fed.R.Bankr.P. and Rule 45(e) F.R.Civ.P. (Docket ID No. 60) ("Supplemental Affidavit"). The Supplemental Affidavit identified

with specificity, the extent of the Debtor's and Hockler's failure to comply with the Subpoena and the First Order. At the conclusion of the Second Hearing, the Court found Hockler in contempt of Court due to the failure of the Debtor and Hockler to comply with the terms and provisions of the Subpoena and the First Order, respectively. On November 30, 2006 the Court entered an Order (Docket ID No. 64) ("Second Order") memorializing the relief granted at the Second Hearing.

On January 8, 2007, Saylavee filed a Motion (a) for Order of Contempt Pursuant to Rule 9016 Fed.R.Bankr.P. and Rule 45(e) F.R.Civ.P., and (b) Imposition of Sanctions ("Sanctions Motion") (Docket ID No. 68). On February 12, 2007, counsel for Saylavee filed a Supplemental Affidavit on Support of Motion (a) for Order of Contempt Pursuant to Rule 9016 Fed.R.Bankr.P. and Rule 45(e) F.R.Civ.P., and (b) Imposition of Sanctions (Docket ID No. 72) ("Testa Affidavit").

On February 23, 2007, the Court held a hearing on the Motion for Contempt ("Sanctions Hearing"). On April 10, 2007, counsel for the respective parties engaged in a conference call originated by the Court Clerk during which each party was requested to submit, in writing, a letter to the Court identifying Hockler's alleged compliance and non-compliance with the Subpoena, First Order and Second Order which formed the subject matter of the Contempt Motion. By way of letter dated April 20, 2007 ("Testa Letter"),[2] together with attachments A through G annexed thereto, Saylavee provided the Court with a detailed itemization of Hockler's non-compliance with the Subpoena, First Order and Second Order.

On May 10, 2007, the Court issued a bench ruling ("Ruling") granting the

---

[2] This is Item No. 1 on Appellee's Designation of Additional Items to be Included on the Record on Appeal

Sanctions Motion and awarding sanctions in favor of Saylavee for legal fees and expenses in the amount of $18,000.00. Subsequently, on June 1, 2007 the Court issued an Order (Docket ID No. 90) consistent with the findings of the Ruling ("Sanctions Order"). The Sanctions Order is now the subject of this appeal.

## ARGUMENT

**A.    Bankruptcy Court found that Hockler's failure to obey the Subpoena was without adequate excuse**

Notwithstanding Hockler's attempts to obfuscate the facts and argue to the contrary, the underlying issue on appeal is nothing more than the straight-forward failure of an individual to comply with the mandates of a duly issued subpoena without adequate excuse and two separate orders of the Court entered with respect thereto.

The Subpoena was issued pursuant to Rules 2004(c)[3] and 9016 Fed.R.Bankr.P. to compel the attendance of Hockler and for the production of documents at the 2004 Exam. Rule 9016 Fed.R.Bankr.P. provides that Rule 45 F.R.Civ.P. applies in the Bankruptcy Case. The relevant portion of Rule 45 F.R.Civ.P. for this appeal is found in subdivision (e) thereof , to wit:

"(e) **Contempt**.  Failure by any person <u>without adequate excuse</u> to obey a Subpoena served upon that person may be deemed a contempt of the court from which the Subpoena issued." (Emphasis added).

As the Court shall glean from the record on appeal, Hockler was provided ample time and multiple opportunities by the Court to obey the Subpoena, yet failed to do so without adequate excuse.

---

[3]  Rule 2003(c) Fed.R.Bankr.P. specifically directs that a subpoena to compel attendance and/or produce documents at a Rule 2004 Exam is governed by Rule 9016 Fed.R.Bankr.P.

1.    <u>The Motion to Compel</u>

Hockler was served with a Subpoena on April 29,2006 (Item No. 1, Page 2, ¶ 7) [4].  The documents designated for production were identified on Schedule A attached to the Subpoena (Item No. 1, Page 2, ¶ 8).  Following an exchange of correspondence which addressed Hockler's initial written objections to the Subpoena (Item No. 1, Pages 2-3, ¶ 8-12), Saylavee received certain documents in partial and extremely limited compliance with the Subpoena (Item No. 1, Page 3, ¶ 13) and so notified counsel for Hockler (Item No. 1, Page 3, ¶ 14). Subsequently, by way of letter dated August 4, 2006, Hockler provided certain additional documentation, the delivery of which still failed to bring Hockler in compliance with Subpoena particularly with regard with the continuing failure to produce bank and financial records, cancelled checks, loan documentation, general ledgers and check registers (Item No. 1, Page 3, ¶ 15).

By virtue of Hockler's disobeyance of the Subpoena, Saylavee was constrained to file the Motion to Compel (Item No. 1).

During the First Hearing, it was established that:

(a)    Hockler was the sole owner and president of the Debtor (See Transcript, Item 4, Page 5, lines 18-23); and

(b)    In response to Hockler's counsel's continued representation that over 6,500 documents were produced, the Court stated,

**"it doesn't matter what you've produced, it's what you have not produced."**    (See Transcript, Item 4, Page 7, lines 1-3); and

---

[4]  Unless otherwise indicated, all references to "Item No." shall refer to each item as numbered in Appellant's Designation of Record on Appeal and Statement of Issues filed by Appellant, Scott B. Hockler, Inc. (sic) dated June 21, 2007.

    (c)        With Mr. Hockler present in the court room, the Court stated,

> **"Mr. Hockler, or whoever you are back there, I hope you are listening.  Mr. Hockler will within a week under oath, certify by affidavit every single bank account; the number, the bank and he will do whatever is necessary to obtain from the bank all bank records relating to every account and if he doesn't he will be held in contempt.  I hope that's clear.  I don't mean to be subtle here."**  (See Transcript, Item 4, Page 9, lines 21-25 and Page 10, lines 1-3);

    (d)        Counsel for Hockler acknowledged that the information was

"crystal clear" and there would be no problem (See Transcript,

Item 4, Page 10, lines 4-8).

As a final first warning during the First Hearing, the Court emphatically stated,

> **"Make no mistake that Mr. Hockler is going to have to comply in complete and utter detail with every single aspect of the document requests and he is going to have to justify himself under oath because his deposition will be taken and he'll have to certify - - if he says, 'Well, there are no corporate records of this sort or that sort,' he's going to have to say that under oath and somehow be believable if it's the kind of document records that must surely have existed."**
> (See Transcript, Item 4, Page 11, lines 19-25 and Page 12, line 1).

Consistent with the directions of the Court during the First Hearing, the

Court entered the First Order (Item No. 5) that unequivocally provides:

"ORDERED, that Scott B. Hockler shall perform and take whatever steps are

necessary to procure all bank records demanded by Saylavee in the Subpoena

more fully described in the above referenced motion, and shall provide such

documents to counsel for Saylavee, LLC and the Trustee **forth with**."   In order to

monitor Hockler's compliance with the Subpoena and First Order, a further

hearing on the Motion to Compel was scheduled to be held on November 7, 2006.[5]

2.    <u>The Second Hearing</u>

Unbelievably, by the date of the Second Hearing and despite the explicit directions of the Court, Hockler was still not in compliance with the Subpoena but also, by that time, the First Order.

At this juncture, it is also important to note that more than six (6) months had elapsed since service of the Subpoena and six (6) weeks since the First Hearing.  During the Second Hearing the Court made the following observations:

(a)    **". . . I don't agree that Mr. Hockler has no responsibility here. He was the proprietor of this corporate entity.  He is the one whose failure to maintain documents and records of the corporate entity with creditors who are entitled to know what he did with the money of this debtor is responsible.  So far as I am concerned, he is in contempt."**  (See Transcript, Item 7, Page 22, lines 17-22); and

(b)    With respect to Hockler's insistence that he should not bear the expense of procuring the bank records, the Court opined,

**"So far as I am concerned, it is grossly untimely [objection to the Subpoena] and, secondly, as far as who should bear the cost of this, in my view it is not the creditors of this estate who are entitled to know and understand the financial stewardship of Mr. Hockler and who have been deprived of that by his failure to keep the corporate records.  It is his responsibility, not the creditors and not the Chapter 7 Trustee's responsibility."**  (See Transcript, Item 7, Page 23, lines 9-15); and

---

[5]    Per agreement between the parties and consent of the Court, the Second Hearing was held on November 15, 2006; however, the date of November 7, 2007 appears on the transcript for this hearing. (See Docket No. 63).

(c)    With respect to Hockler's alleged excuse for non-compliance with

the Subpoena and First Order, the Court stated,

**"So as far as the Citibank bank records are concerned, I will sign an order, <u>once</u> <u>again</u>, requiring Mr. Hockler to do whatever he has to do and if it entails a cost, it is for him. . . . we'll have to issue another order now that requires him to obtain those documents and pay for them, very, very promptly."**  (See Transcript, Item 7, Page 24, lines 9-24); (Emphasis added) and

(d)    With respect to Saylavee's continuing efforts to procure the

documents under the Subpoena, the Court stated,

**"maybe there was absolutely nothing improper; there were no distributions that were subject to recapture under Article 5, not one, but they're entitled to the information and it was his corporation.  So, okay, who else does one look to and they shouldn't have to come back to court again and again and again and there have to be consequences.  There have to be consequences for that kind of conduct."**  (See Transcript, Item 7, Page 28, lines 5-12).

The reference above by the Court to Article 5 proceedings is derived from

Saylavee's assertion that Hockler and his spouse, Pam Stone, were the recipients

of significant preferential and/or fraudulent transfers from the Debtors'

bankruptcy estate prior to the entry of the Order for Relief.  Indeed, the Trustee

has recently commenced two separate adversary proceedings against these

individuals, to wit:

(a)    "Jeffrey L. Sapir, as Trustee in Bankruptcy of Ducky Interactive,

Inc.  v. Scott B. Hockler," Adversary Proceeding No. 07-08273 in

which the Trustee seeks, among other things, recovery of

preferential transfers in the amount of $58,448.64 together with an

unspecified amount of alleged fraudulent transfers and related

relief; and

(b)     "Jeffrey L. Sapir, as Trustee in Bankruptcy of Ducky Interactive,

Inc. v. Pam Stone," Adversary Proceeding No. 07-08274 where the

Trustee seeks recovery of fraudulent transfers in the amount of

$179,000.00 and preferences in the amount of $75,000.00.

Saylavee respectfully asserts that the dilatory conduct of Hockler in failing

to obey the Subpoena and Orders of the Court is clearly designed to (a) mask the

extent of his defalcation and possibly that of his spouse, Pam Stone, as well, and

(b) delay prosecution of claims by the Trustee past the two (2) year statute of

limitation period found in 11 U.S.C. § 546(a)(1)(A).

As the Court will observe from a review of the transcript of the Second

Hearing (Item No. 7), an extensive colloquy took place at which time counsel for

Saylavee clearly identified for the Court which items were still outstanding from

Hockler.  These included documents that Hockler has insisted were in the

possession of the Trustee and which prior letters from the Trustee clearly indicate

were not, and never were, in his possession, particularly bank records (See e.g.

Item No. 1, Exhibit F).[6]   In particular, the bank statements and checks for at least

the six (6) months immediately prior to the filing of the bankruptcy case were not

in his possession.  Notwithstanding Hockler's reference to this issue at multiple

times during the pendency of this case and rejection thereof by the Court, this

---

[6]   Particularly the letter from Jeffrey L. Sapir, Esq. to Louis J. Testa, Esq. dated May 16, 2006.

baseless assertion continues to be made by Hockler in the Brief for Appellant

dated August 2, 2007 ("Appellant's Brief") filed in this appeal.[7]

3.    <u>The Second Order</u>

    The Second Order entered on November 30, 2006 (Item No. 8) embodied

the relief granted by the Court at the Second Hearing, to wit:  (a) the Motion to

Compel was granted and the Debtor's Supplemental Objection[8] (Item No. 6) was

specifically overruled; (b) Hockler was found in contempt of the First Order and

of compliance with the Subpoena; (c) Hockler was, again, directed to perform and

take whatever steps were necessary to procure all bank records demanded by

Saylavee in the Subpoena and to provide such documents to counsel for Saylavee

forthwith and, finally, (d) Hockler and the law firm of Dreier, LLP were directed

by the Court to produce and deliver to counsel for Saylavee "copies of all written

attempts, including without limitation, letters written to any entity or individual in

an effort to procure the documents demanded in the Subpoena including banks,

accountants and former lawyers forthwith."  The Second Order also provided that

at the appropriate time, Saylavee would be permitted to make further application

to the Court for the imposition of sanctions to be levied against Hockler by virtue

of the findings of contempt therein.

    It is well settled that the failure to obey a valid Subpoena without adequate

excuse is a contempt of the Court that issued the Subpoena, see <u>In re Sealed Case</u>,

141 F.3d 337 (D.C. Cir.1998) and <u>Public Service Co. of New Hampshire v.</u>

<u>Portland Natural Gas</u>, 128 F.R.D. 361 (D.N.H. 2003).  It is abundantly clear from

---

[7]  See Appellant's Brief, page 6.
[8]  This included an untimely objection to the Subpoena.

the record through the Second Hearing that the Court properly found that Hockler

did not establish an adequate excuse for disobeyance of the Subpoena, thereby

resulting in the findings of contempt.  The findings of fact relied upon by the

Court in reaching this conclusion are not clearly erroneous nor the result of a

mistake which may now be upset by this Court.  See In re Godt, 282 B.R. 577

(Bankr. E.D.N.Y. 2002) and cases cited by Appellant.

4.    The Sanctions Motion and Sanctions Hearing

a.  The Sanctions Motion

Having satisfied case law requirements that sanctions are not available

without a Court order compelling compliance with a subpoena, Cruz v. Meachum,

159 F.R.D. 366 (D.Conn. 1994) and determining that Hockler was now in non-

compliance with the directions of the Court in the Second Order, as well as the

Subpoena and the First Order, Saylavee filed the Sanctions Motion on January 8,

2007.  At this juncture of the proceedings, more than eight (8) months had elapsed

since service of the Subpoena and three (3) months since Hockler was

admonished by the Court to do whatever was necessary to obtain the bank records

and other documents demanded in the Subpoena, forthwith.  The content of the

Sanctions Motion together with the Affidavit of Louis J. Testa, Esq. submitted in

support thereof (ID No. 10) recite the extent of Hockler's non-compliance with

the Subpoena, First Order and now the Second Order.

b.    The Sanctions Hearing

The Sanctions Hearing was held on February 13, 2007.  By this time, the

Court had received and considered on multiple occasions virtually all of the

11

assertions and excuses now again recited in the Appellant's Brief and appears to have finally lost its patience with the conduct of Hockler.

During the Sanctions Hearing:

(a)    With respect to Hockler and his counsel's requirement under the Second Order to write all parties, including accountants for the information contained in the Subpoena and after being informed that no letter was written to a certain accountant[9] in California that had prepared the Debtor's 2005 tax returns,

**"I'm just absolutely stunned that you have not made inquiry to try to find documents from the accountant that prepared a tax return of the source documents that are used to prepare the documents.  I am floored.  You still haven't done it to this day."** (See Transcript, Item 14, Page 27, lines 19-23)[10]; and

(b)    Further with respect to the issue of the California accountant,

**"If you were on the other side conducting discovery and trying to find out where the money came from and where it went and you found out that there was an accountant that had prepared a tax return wouldn't you immediately as a competent - - as a base line competent attorney try to find out came in from  and where it went out to, a demand that the accountant produce all of his documents on the basis at which he conducted discovery?  Of course you would."** (See Transcript, Item 14, Page 28, lines 1-8); and

(c)    Finally, as a direction to counsel in the anticipation of future litigation,

---

[9]  Theodore D. Cohen
[10]  This omission is particularly illustrative of Hockler's calculated attempts to avoid the production of evidence to  support recovery of preferences and fraudulent transfers against he and his wife.  The accountant in California prepared the tax returns in August, 2006 for the debtor's 2005 tax year <u>more than a year after the commencement of the bankruptcy case</u> at a time where Hockler has continually maintained that the documents obviously used to prepare these tax returns were allegedly in the possession of the Trustee.  Astoundingly, this assertion continues in Appellant's Brief.

**"And you are going to be barred from putting in any other documents or extremely sanctioned, seriously sanctioned, so that's where it is except with regard to the bank signature cards and whatnot, which is just inexcusable to me and unimaginable, and the failure to get whatever documents the - - this accountant had, because he must have a raft of documents that would clearly be responsive to your initial documents request."** (See Transcript, Item 14, Page 50, lines 17-24); and

(d)     Concerning the issue of sanctions,

**"I deferred the issue. Well, it's deferred enough. It's deferred - - it's been deferred plenty and the amount that has been produced since then is ample evidence of the contumacy that preceded it. So that's the reason for my ruling."** (See Transcript, Item 14, Page 59, lines 18-22).

5.     <u>The April 10, 2007 Conference Call with the Court</u>

On April 10, 2007, counsel for Hockler and Saylavee participated in a conference call with the Judge's law clerk at the behest of the Court. The primary purpose of the call was to inform counsel of a series of questions posed by the Court to be answered in writing regarding the extent of the compliance and non-compliance of Hockler with the Subpoena. The Testa Letter of April 20, 2007[11] together with Attachments A through G thereto ("Attachments") was submitted in response to this request and contains a precise recitation by Saylavee of the extent of Hockler's compliance and, more importantly, significant non-compliance with the Subpoena, First Order and Second Order for which Hockler had previously been found in contempt. Upon information and belief, the contents of the Testa

---

[11]  Item No. 1 on Appellee's Designation of Additional Items to be Included on the Record on Appeal dated June 29, 2007.

13

Letter and Attachments were not refuted by Hockler prior to the Ruling or entry

of the Sanctions Order (Item No. 17).

6.    <u>The Ruling and Sanctions Order</u>

The Ruling issued on May 10, 2007 was made after consideration by the

Court of each of the items designated in the record on appeal including the Testa

Letter and Attachments.

In the Ruling, the Court stated:

(a)    With respect to the question of granting sanctions:

**"I've already granted the motion for sanctions. We're dealing now with the amount. However, I have looked again at the question of granting sanctions at all and it is my conclusion that it is appropriate to grant sanctions because Hockler really did not make efforts at compliance requiring the filing of several further motions."** (See Appendix A, Page 20, line 14-19)[12]; and

(b)    With respect to the failure of Hockler to retain documents:

**"I should point out that with regard to many of these documents, they are documents that Hockler and his business should have had and should have retained. That is perfectly clear from the provision of Section 727(a) which basically can deny a discharge in its entirety for failing to maintain records necessary to ascertain the financial affairs of a debtor. To the extent that the records were not maintained and that one would have expected to be maintained were bank records. The request to the bank should have been made right at the outset. Had they been made right at the outset those documents could have been produced by last summer."** (See Appendix, Page 21, Lines 12-22)

These two statements by the Court clearly illustrate that the Court made a

factual determination that Hockler did not establish an adequate excuse as

---

[12] Appendix A is comprised of that portion of the Transcript of the hearing on May 10, 2007 comprising the Ruling (pages 19-22).

required under Rule 45(c) F.R.Civ.P. to excuse his blatant disobedience of the Subpoena, and the First and Second Orders as well. What Hockler and his counsel fail to realize is that an entity that elects to seek bankruptcy relief assumes certain basic and fundamental duties and responsibilities, not only to the Court, but to creditors and parties-in-interest. The documents demanded by Saylavee to be produced by Hockler under the Subpoena are nothing more than those documents that normally are associated and expected to be maintained by a Debtor operating the type of business as that of the Debtor in this case. This is particularly true where the Debtor is a closely held corporation, managed, controlled and owned by one individual. Hockler's conduct is particularly suspicious in this case as the primary records continually sought by Saylavee, many of which are still outstanding, pertain directly to the financial affairs of the Debtor for the period of time leading up to the entry of the Order for Relief. Since Hockler and his spouse are defendants in pending actions brought by the Trustee to recover preferential and fraudulent transfers, it is reasonable to assume that disobeyance of the Subpoena may have been calculated to avoid disclosure of the evidence of the same.

**B.    Appellant's arguments are more properly grounds for the remedies of a Protective Order, or Motion to Quash and have been waived**

Rule 45(c) F.R.Civ.P. governs the protection of persons subject to a Subpoena.

Throughout Appellant's Brief, Hockler argues that the Appellee engaged in some sort of misconduct in its interactions with Hockler and acted improperly in seeking disclosure of the Debtor's records in this case.

Under Rule 45(c)(1) F.R.Civ.P. the party issuing a Subpoena is responsible to take reasonable steps to avoid imposing undue burden or expense on the person subject to that Subpoena.  Here, it was not until six (6) months after service of the Subpoena that Hockler first argued to the Court that the production of the bank records constituted an undue burden or expense  (See Item No. 6, Page 9, Section IV, ¶ 19-23).

During the Second Hearing, the Court specifically addressed Hockler's concerns, particularly with regard to the expense for the procurement of the bank records and timeliness of the objection to the Subpoena (See Transcript, Item 7, Pages 21-23).  Of particular importance are the following statements by the Court clearly manifesting a rejection of these arguments:

**"I have ruled on that.  He should bear the expense; (1) you're objection on October 25th to a Subpoena that was issued on April 29th is grievously and woefully late and to say, 'well, we didn't know about the Court's order until October 10' is really very little help because the Court's Order dated October 10th was a result of his previous failure and, in fact, his complete thumbing of his nose at the Subpoena from the end of April on.**

**So far as I am concerned, it is grossly and timely and, secondly as far as who should bear the cost of this, in my view it is not the creditors of this estate who are entitled to know and understand the financial stewardship of Mr. Hockler and who have been deprived of that by his failure to keep the corporate records.  It is his responsibility, not the creditors and not the Chapter 7 Trustee's responsibility."**
(See Transcript, Item 7, Page 23, lines 1-15)

If Hockler truly believed that the Subpoena was not valid or improper, the appropriate remedy would have been to seek relief via either a Motion to Quash or for a Protective Order under Rule 26(c) F.R.Civ.P.  This rule would have been applicable in this instance pursuant to Rule 9014(c) Fed.R.Bankr.P.  Neither of these remedies were sought in this case.

**C.      Certain matters asserted by Hockler in Section III of the Appellant's Brief should not be considered part of the Record on Appeal**

Appellant impermissively seeks to raise arguments in support of its Appeal based upon events which took place subsequent to issuance of the Ruling on May 10, 2007.

Particularly on pages 13-15 of Appellant's Brief, Appellant makes reference to a Settlement Agreement and Motion to Approve Compromise which Appellant has attached as Exhibits "O" and "S" respectively. These items were not considered by the Court in rendering its decision and do not form part of the Record on Appeal. Consequently, it is respectfully submitted that these items should be ignored by this Court. See In re Chateaugay Corporation, 64 B.R. 990 (F.D.N.Y. 1996).

To the extent the Court desires to entertain these items, the Court should be aware of a material fact omitted by Appellant. The Bankruptcy Court did not approve the Settlement Agreement and denied the Motion to Compromise at a hearing held before the Court on July 24, 2007.

**D.      Alleged  misrepresentations of counsel**

Unfortunately, the hostility and mean-spirited tenor of Appellant's arguments which may be gleaned from a review of the entire Record on Appeal have now also been directed to counsel for the Appellee in the Appellant's Brief. (See Appellant's Brief, Section II B, Pages 9-10)

Other than to state categorically that such allegations are baseless and untrue and, indeed, offensive, counsel for the Appellant reserves the right to address these allegations at the appropriate time and place, if so requested by the Court.

## **Conclusion**

The findings of contempt and imposition of sanctions by the Court against Scott B. Hockler were based upon clear and convincing evidence and are entirely appropriate and reasonable under the circumstances of this case.  Hockler did not possess an adequate excuse for the disobeyance of the Subpoena which was properly issued under Rule 45 F.R.Civ.P.  Moreover, in light of the totality of circumstances as demonstrated by the record,  the instant appeal is frivolous and without sound basis in law or fact, thereby entitling Appellee, Saylavee, LLC and award of reasonable attorneys fees and costs incurred with respect thereto.

By  /s/ Louis J. Testa
     Louis J. Testa, Esq. (LT2213)
     Neubert, Pepe & Monteith, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     203.821.2000 PH / 203.821.2009 FX
     Attorneys for Appellees, Steven Lichtman
     and Saylavee LLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————

In re:  Ducky Interactive, Inc                    **Case No. 05-23457**
                                                   **(Chapter 7)**
                              **Debtor.**
———————————————————

**Scott B. Hockler,**
                              **Appellant.**      **No. 07-civ-6410-(SCR)**
**vs.**
                                                   **Before Hon. Stephen C. Robinson**
**Steven Lichtman and Saylavee LLC,**

                              **Appellees.**
———————————————————

## <u>AFFIRMATION OF SERVICE</u>

      Elizabeth A. Crafts declares under penalty of perjury as follows:

      1.     I am over 18 years of age, I am not a party to the within action, and I am a paralegal employed by Neubert, Pepe & Monteith, P.C.

      2.     On August 31, 2007, I served the document entitled "Brief of Appellee" in the above action upon the Appellants by placing a true and correct copy of the document in an envelope, sealed and addressed to:

Joseph M. Pastore, III, Esq.
Dreier LLP
One Landmark Square
Stamford, Connecticut  06901

      3.     I placed the sealed envelope with postage fully prepaid, for collection and mailing at Neubert, Pepe & Monteith, P.C., 195 Church Street, New Haven, Connecticut, 06510.  I am familiar with Neubert, Pepe & Monteith's practices regarding the collection and processing of mail, which practices include depositing the mail with the United States Postal Service, postage prepaid, on the same day.

4.      I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing stated in this declaration.


                                            /s/ Elizabeth A. Crafts
                                            Elizabeth A. Crafts

Dated:  August 31, 2007


M:\LITIGATE\All Other\Saylavee, LLC\District SDNY 07-civ-6410\Brief of Appellee. Hockler vs Lichtman. US Dist. Court.LJT 8.28.07.doc